**FILED**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

JAN 2 8 2008  *aew*
1-28-2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

United States of America ex rel.

Joseph Max #N-21823
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

**08CV616**
**JUDGE KENNELLY**
**MAG. JUDGE NOLAN**

Warden, Kevin Gilson
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)**

ATTORNEY GENERAL OF THE STATE OF

LISA Madigan
(State where judgment entered)

Case Number of State Court Conviction:

81 C 2158

PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of Cook County, Illinois. 2650 South California Ave. Chicago, IL. 60608

2. Date of judgment of conviction: February 4, 1982

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

Murder -- indictment number 81 C 2158

4. Sentence(s) imposed: Seventy years

5. What was your plea? (Check one)   (A) Not guilty   ( ✓ )
                                     (B) Guilty       ( )
                                     (C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

## PART I -- TRIAL AND DIRECT REVIEW

1. .Kind of trial:  (Check one):        Jury ( ✓ )        Judge only (   )

2.  Did you testify at trial?   YES ( ✓ )        NO        (   )

3.  Did you appeal from the conviction or the sentence imposed?  YES (   )   NO (   )

   (A)  If you appealed, give the

      (1)  Name of court:  Appellate Court of Illinois

      (2)  Result:  Denied

      (3)  Date of ruling:  March 9, 1984

      (4)  Issues raised:  Ineffective assistance of Counsel, Improperly Sentenced to extended-term, Cross-examination of Co-defendant pending cases and plea-agreement. Voir dire.

   (B)  If you did not appeal, explain briefly why not:

   _____

4.  Did you appeal, or seek leave to appeal, to the highest state court?  YES ( ✓ )      NO (   )

   (A)  If yes, give the

      (1)  Result  Denied

      (2)  Date of ruling:  July 5, 1984 (no: 60003)

      (3)  Issues raised:  Ineffective assistance of Counsel, Voir dire, Improperly Sentenced, Co-defendant's pending Cases and plea agreement.

   (B)  If no, why not:  _____

5.  Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( ✓ )  No (   )

   If yes, give (A) date of petition: March 1987   (B) date *certiorari* was denied:  June 8, 1987

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( ✓ )   NO ( )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A.   Name of court:   Circuit Court

B.   Date of filing:   October 4, 2000

C.   Issues raised:   Vacate extended portion of Sentence, (Apprendi-Vs-New Jersey) Ineffective assistance of Counsel,

D.   Did you receive an evidentiary hearing on your petition?   YES ( ✓ )   NO ( )

E.   What was the court's ruling?   Further guidence from Supreme Court needed.

F.   Date of court's ruling:   January 18, 2001

G.   Did you appeal from the ruling on your petition?   YES ( ✓ )   NO ( )

H.   (a) If yes,   (1) what was the result?   Denied

(2) date of decision:   April 24, 2002

(b) If no, explain briefly why not: _____

I.   Did you appeal, or seek leave to appeal this decision to the highest state court?

YES ( ✓ )   NO ( )

(a) If yes,   (1) what was the result?   Denied

(2) date of decision:   October 7, 2003   (no: 93973)

(b) If no, explain briefly why not: _____

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?  YES ( )       NO (✓)

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

      1. Nature of proceeding    _____

      2. Date petition filed    _____

      3. Ruling on the petition    _____

      3. Date of ruling    _____

      4. If you appealed, what was the ruling on appeal?    _____

      5. Date of ruling on appeal    _____

      6. If there was a further appeal, what was the ruling?    _____

      7. Date of ruling on appeal    _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?
      YES (✓)   NO ( )

   A. If yes, give name of court, case title and case number: District Court Northern District of Illinois, Eastern Division — (84 C 8425)

   B. Did the court rule on your petition?  If so, state

      (1) Ruling: Denied - Motion for Reconsideration

      (2) Date: November 6, 1984

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

YES ( )   NO (✓)

If yes, explain: _____

_____

## PART III -- PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one _Ineffective assistance of Counsel_

Supporting facts (tell your story briefly without citing cases or law):

So weak was the evidence against petitioner apart from Co-defendant Gonzales' testimony, and so weak would that testimony have been if effective cross-examination had been feasible. Defense counsel's performance at petitioners Murder trial was constitutionally ineffective, counsel failed to object on repeated gang accusations against petitioner in court. Counsel also failed in impeaching states * (see additional pages on back)

(B) Ground two _Extended Sentence_

Supporting facts:

"Illinois Constitution," that, "all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." The judge in Petitioner's case never considered his age (19) and productiveness when sentencing petitioner to an extended-term of seventy (70) year. The court failed to balance or temper its * (see additional pages on back)

5

(C) Ground three    Prosecutor Misconduct
Supporting facts:

Prosecutors, as much as any other officer in the judicial process, has an obligation to safeguard the right to trial by an impartial jury. Prosecutor's improper remarks such as "Gangbanging Punk", and "Gangleader" at defendants trial were deliberately placed before the jury in a manner calculated to evoke personal prejudice against the defendant. *(see pages on back)

(D) Ground four    Voir dire, Gangs and Gang affiliation.
Supporting facts:

Jurors should be provided by the court the standards of instruction on the testimony of an accomplice. When the only chief witness says that he was involved in the commission of a crime with the defendant. The testimony of that state witness is subject to suspicion and should be considered by the jurors with caution. I should be carefully examined in light * (see additional pages on back)

2  Have all grounds raised in this petition been presented to the highest court having jurisdiction?
        YES (✔)    NO ( )

3.  If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:

(E) Ground Five  Cross-Examination and plea agreement - Co-defendant
Supporting Facts:

Counsel failed to expose and inquire complete arrangement into the plea-agreement and exact sentence that Co-defendant would serve.

* (See additional pages on back)

6

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing  _Pro-Se_

(B) At arraignment and plea  _Pro-Se_

(C) At trial  _Micheal Cody_

(D) At sentencing  _Micheal Cody_

(E) On appeal  _State Appeallant Defender_

(F) In any post-conviction proceeding  _Appeallant Defender and Karl Minkus._

(G) Other (state):  _Samuel F. Adam and Pro-Se_

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (✓)   NO ( )

Name and location of the court which imposed the sentence: _Circuit Court of County of Cook._

Date and length of sentence to be served in the future _June 12, 1982 (14 year, extended-term._

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _December 28, 2007_                   _Pro-Se_
                (Date)                                         Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Mr. Joseph May_
(Signature of petitioner)
_N-21823_
(I.D. Number)
_R.R.#4 Box 196, Mt.Sterling, Il._
(Address)                               _62353_

REVISED 01/01/2001

7

only central witness who was originally charged with the murder of the victim. Counsel failed to provide an effective overall defense strategy and failed to impeach key state witness based upon "undisclosed plea-agreement and short sentence for his testimony against petitioner." Counsel failed to challenge the state's bolstering of testimony of Co-defendant Gonzales and failed to object on numerous accurances to prosecutorial misconduct about gang activity throughout the entire trial.

In essence, the case came down to a credibility battle between Gonzales and Petitioner, requiring the State to convince the jury beyond a reasonable doubt that Gonzales was the one telling the truth. The other state witness was a person (Baltazar) who was <u>not</u> present at the shooting but who testified that petitioner had told him that he (petitioner) had shot at a group of individuals who called themselves "The Nightcrew." However this testimony like Gonzales' testimony, was highly impeachable by any competent lawyer. Nevertheless, petitioner's counsel did virtually nothing to prepare an effective cross-examination about any pending cases and to test their credibility. Significant grounds for such impeachment and reason to testify falsely existed, both as to the consideration they receive in exchange for their testimony and pending cases in court. Gonzales had two(2) pending cases in court. (a) U.U.W. when he (Gonzales) was arrested for possessing an automatic Sawed-off 12-gaige shot gun. (B) statuator rape for having sex with an underage minor of the age of 14 or 15 years of age. Gonzales who was originally charged with the murder, had reason to testify falsely against Petitioner, when Gonzales and prosecutor (m. Madden)

( GROUND ONE ) — Ineffective Assistance of Counsel.

made a plea-agreement to run _all_ of Gonzales cases together and receive a total sentence of Five(5) years to serve only two-and-a-half (2½) in prison, with the time served in the county jail to be included. This information concerning the actual time to be served in prison, as well as Gonzales two(2) other pending cases and plea-agreements was _not_ allowed to be revealed to the jury. Defense Counsel attempted to reveal this information in court, but was denied by the judge. Defense Counsel also failed to submit additional questions or otherwise ask that the court question prospective jurors further regarding their potential bias towards gangs (TR. 70-71, 75) And while Illinois courts have ruled that trial Counsels' failure to question prospective Jurors regarding gang bias may be trial strategy in cases where both the defendant and the victim were gang members. In Petitioner's case, the victim was _not_ a gang member, but was potrayed as an innocent bystander. (TR. 66) Therefore, if given the opportunity to present his claim at an evidentiary hearing, Petitioner will be able to demostrate that his counsel was inffective because his Counsel's failure to question jurors regarding gang bias was outside the range of professionally Competent assistance and _Could not_ be considered trial Strategy.

Vengeance with any consideration of rehabilitation as is mandated.

Petitioner contends that the sentencing judge was barred from making an independent and personal assessment of petitioner's life while growing up. Petitioner had never been to prison, and had one prior conviction, which he pled guilty for probation. And any sentence that increases the penalty beyond the statutory maximum otherwise prescribed for the offense must be proven to a jury beyond a reasonable doubt rather than by the sentencing judge. A defendant has a Sixth Amendment right to have a jury determine based on proof beyond a reasonable doubt any fact that has the effect of increasing a mandatory sentencing range. When petitioner was charged with murder along with a co-defendant in 1981. The statutory maximum sentence range was twenty (20) to forty (40) years. In this case, Petitioner was given a sentence of seventy (70) years, a thirty (30) year enhanced sentence, which violated his Sixth Amendment right. Petitioner's sentence falls far from both the minimum and maximum sentences of twenty (20) to forty (40) years for the crime alleged in the indictment. IT doubles the punishment for which the Petitioner was indicted and autorized by the initial sentencing guideline range in a case where the petitioner would otherwise have received. The Circuit Court should have instructed the jury in petitioner's murder trial as to definition of wanton cruelty where Court had instructed jury that, if it found that

(2)

Petitioner committed first-degree murder, it had to determine whether murder was accompanied by "exceptionally brutal or heineous behavior indicative of wanton cruelty," and then instruct the jury as to definition of both "brutal and heineous." In defendant's trial, the court disregarded these instructions to the jury, in which the victim who died was shot once, and died a few hours later at the hospital. A jury must take into account all the circumstances surrounding an offense in assessing whether the brutality and heineousness of the crime qualify as exceptional to warrant an extended-term sentence. The frames would not have thought it too much to demand that, before depriving a man of more years of his liberty, the state should suffer the modest incovenience of submitting its accusation to the unanimous suffrage of twelve of his equals, and neighbors, rather than an employee of the state. The historical foundation for our recognition of these principles extends down centuries into the common law. To guard against a spirit of oppression and tyranny on the part of rules. And as the great bulwark of [our] civil and political liberties, trial by jury has been understood to require that the truth of every accusation, whether preferred in shape of indictment, information or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [The defendants] equals and neighbors.

(GROUND THREE) - Prosecutor Misconduct.

The prosecutor's comments clearly were improper and he should have been rebuked by the trial judge. When Prosecutor's make deliberate gang comments, they have the tendency to mislead the jury and to prejudice the accused. Whether remarks were isolated or extensive, strength of commpetent proof introduced to establish guilt of the accused, and whether comments were deliberately placed before jury to divert attention to extraneous matters. Defendants due Process was denied by prosecutors deliberate remarks which sufficiently infected the entire trial, so as to make it fundamentally unfair. Prosecutors may not make material misstatements of Fact in summation. And while prosecutors May argue their case with vigor, they may not make "intentional comments and misrepresentations to jury." They have special duty of integrity to uphold when arguing their cases in Court. Without question, the most common form of misconduct taking place during a criminal trial involves over-zealous tactics used by the prosecutor. Improper statements are geared to appeal to jurys emotion or otherwise prejudice the defendant in its eyes. Another common practice of some prosecutors is to express "Personal opinion" as to the guilt of the person of trial. This is not only highly objectionable, but extremely prejudicial. During Petitioners trial, the Prosecutor (Madden) repeatedly called the defendant a "Gangbanging Punk, gang member and gangleader," The Prosecutor spoke of gang activity throughout the entire trial, disregarding even witnesses statements

(2)

(GROUND THREE) - Prosecutor Misconduct.

that the Party Players were a group of teenagers of both boys and girls ranging from the ages of 15 to 19 years of age, who enjoyed going to dances and parties. Nevertheless the prosecutors poisoned the trial from opening statements to closing arguments. During defendants trial, defense counsel never objected to the improper remarks in court, as defendant repeatedly asked his attorney to do so. Furthermore, Prosecutorial Misconduct infected the factfinding and Sentencing process, which resulted in defendant receiving an extended - Sentence. During the opening statements, Closing arguments and throughout the entire trial, the prosecutor (Madden) constantly discussed gangs and gang activity to inflame the jury. Over the objection on one or two **occasions** of defense counsel. Yet, the court allowed the prosecutor to Continue his assult against the defendant about his affiliation with gangs. The court allowed additional prosecutors take the stand to testify in front of the jury about gangs. One prosecutor being assigned to "gang prosecutions," (Gregg Owen). but has since gone into private practice. The trial prosecutor (M. Madden) was "disbarred" from practicing law in Illinois and had his name and license stricken from the roll of Attorneys of Illinois after being indicted on criminal charges in 1989 for making false statements to two(2) Clients Concerning money that he (Madden) attempted to obtain from false services, which both Clients had <u>no</u> obligations to pay. (See Exhibit - A). Micheal Madden Committed Criminal Acts which costed him his license to practice law any longer in Illinois.

(3)

This attorney who committed a criminal offense as an attorney of the state, one who agreed to honor and obey the law, was the same person who committed prosecutor misconduct by making improper remarks against petitioner with the sole purpose to create prejudice in the minds of the jurors. The trial court that allowed this prosecutor to continue his assult and lies against petitioner erred in permitting it to be made. The prosecutor's improper remarks throughout the entire trial about gangs unduly prejudiced the petitioner's opportunity to receive a fair trial. Prosecutor's comments on gangs, gang activity and gang affiliation were not limited to one phase of the trial, the entire trial was poisoned by the word "Gangs." Prosecutor Madden also sought to elicit improper and false testimony regarding gangs and gang activity from witnesses who had made plea-agreements with prosecutor Madden, in regards to pending cases. This information was not allowed to be discussed in court, over objection from defense attorney. The improper remarks and comments made by these witnesses about gang affiliation, substantially impaired the petitioner's right to a fair trial. Throughout the petitioners trial, prosecutor misstated facts about gangs and gang activity, put words in witnesses mouth, made untrue insinuations about petitioner, all calculated to mislead the jury. Prosecutor Madden put one individual named "Sosa" on the stand and advised this person to explain to the jury about a robbery

(4)

that occured at the restaurant which he worked, and state to the jury that petitioner committed the crime, which petitioner **was never** questioned, arrested nor charged for any such crime. This witness was brought into Court by prosecutor Madden, and instructed to lie and make false testimony to the jury. Prosecutor continually referred to petitioner as a "Gangbanger, Gangleader and Gangbanging Punk" in an obvious attempt to create class prejudice in jurors. Petitioner contends the jury should have been instructed on Voir dire concerning gangs and gang bias since it is well known fact, the subject on gangs and gang membership is an area of potential bias.

I petitioner would also like to provide (Exhibit-B) concerning trial judges (Arthur J. Cieslik) complaint against him for "rude and sexist remarks to women" And his reprimand for the offense. Judge Cieslik and prosecutor Madden failed to provide petitioner a fair trial which is petitioners right to receive. Together they poisoned the trial, proceedings and jury with the admission of false and misleading testimony and evidence.

# (GROUND FOUR) — Voir dire/Gang affiliation.

of the other evidence in the case as well as plea-agreements made by states only chief witness concerning any and all pending cases. It is within the sound discretion of the trial court to give proper instructions on the elements of the offense and case in order to insure a fair determination of the case.

At petitioners trial, the prosecutor effected the "entire trial", withe prejudicial evidence of gangs and gang affiliation. This tactic was to imflame the jury with hatrate towards the defendant and gang members. The prosecutors EXTENSIVE improper remarks was purposely displayed for the jury in order to direct the jury's attention away from the true issues and evidence in the case.

The essential demands of fairness embedded in the Sixth Amendments right to an impartial jury guarantees an adequate VOIR DIRE designed to "identify unqualified jurors" and ensure the selection of an impartial jury." The full purpose of voirdire examination is to select an impartial jury through intelligent use of challenges. wherefore, charge of actual bias on part of trial judge can be reviewed after conviction. Petitioners trial judge abused his discretion when he limited voirdire examination of jurors concerning any potential bias or prejudice regarding gangs and gang affiliation. When testimony regarding gang membership and gang related activity is to be an integral part of the defendant's trial, the defendant __must__ be afforded an opportunity to question the prospective jurors, either directly or throught questions submitted of the trial court, concerning gang bias. Petitioner's Eight and fourteenth Amendment right to exercise

(2)

(GROUND FOUR) — Voir dire / Gang affiliation.

Voir dire challenge knowingly was infringed when the State trial court refused to allow him to ask questions or questions that should have been asked and directed towards determing whether jurors harbored misconceptions about gangs and gang activities that might bias Petitioner in favor of a guilty verdict and has a right to be retired and have his extended sentence vacated. Petitioner argues that limiting Voir dire creates unreasonable risk of bias or prejudice infecting trial process; and violates his due process. Petitioner also contends that the voir dire he requested was necessary to dispel the common misconception of gang bias. The right to an impartial jury is basic to our system of justice. This right carries with it the concomitant right to take reasonable steps designed to ensure that a jury is impartial. Perhaps the most important device to serve this end is the jury challenge, a device based on voir dire examination. Although the proper scope of Voir dire is generally left to the sound discretion of the trial court, that discretion is not unfettered. Limits on voir dire that creates an unreasonable risk of bias or prejudice infecting the trial process violate due process. In petitioners case, he has been deprived of a fair trial and stripped of his right to due process. The district court is obligated to conduct individual voir dire to assure impartiality. This was poorly disregarded and limited at petitioners trial.

In petitioners case, both the voir dire and trial judge's instructions were inadequate to dispel

(3)

# (GROUND FOUR) - Voir dire/Gang affiliation.

biasing misconceptions about gangs and gang affiliation. He did not have the benefit of such clarification. If jurors began with an unfounded fear of gang violence and ended with that same fear. Voir dire was essential in this case, and make it all the more important. The trial court erroneoresly refused and limited voir dire on gang bias. "Allowing voir dire admittedly plays a critical function in assuring that petitioner's Sixth Amendment right to an impartial jury will be honored." The essential demand of fairness embedded in the Sixth Amendment's right to an impartial jury guarantees an adequate voirdire designed to identify unqualified jurors and ensure the selection of an impartial jury." In Chicago, as in every other large metropolitan area, there is a deep, bitter and widespread prejudice against street gangs." Therefore, capable Chicago trial lawyers ought know conducting voir dire in gang cases presents particular challenges since gang membership and gang activity is an area of potential bias. Jury selection is within the gambit of requirements for effective assistance of counsel. Most potential Illinois jurors and their families may have had no direct or indirect involvement with street gangs, but many of them would probably hold opinions on the subject. Herein the instant case <u>no</u> questions were asked during voir dire about bias towards gangs and personal feelings about gang activity, and thus no means to elicit jurors perception and predisposition towards gangs. Without questions by the court or attorney, there was <u>no</u> sufficient way to create a reasonable guarantee that any bias towards petitioner would be discovered. Limiting voir dire made

(4)

(GROUND FOUR) - Voir dire/Gang affiliation.

it almost impossible for petitioner to receive a fair trial.

In this case the persona of the street gang ran like a thread through the fabric of the trial with discussions of gang territory, gang wars, and gang affiliation. Since there is a strong prejudice in our society against membership in gangs, and the prosecution successfully emphasized the role of gangs as "Central to it's case," revealing gang bias of prospective jurors during Voir dire was essential in this case. On appeal an issue was raised as whether because repeated insinuations, questions, and arguments regarding Petitioner's gang affiliation were of no probative value and were introduced to inflame the jury... a new trial was Mandated. Pretrial the defense sought a ruling on its motion in limine to preclude any evidence concerning petitioner's affiliation with gangs. This motion concluded that any gang testimony that would be introduced or solicited by the state would be in fact "a red herring dragged across the path of truth to lead the trier of fact into Collateral issues."(R.p.857) Co-defendant (Gonzales) turned Chief witness testied, over objection that he thought the people on the street were "Saints," a street gang (R.p.347) Gonzales also admitted to once being a member of the Latin Kings street gang (R.p.370) State witness Kalinsky testified to a Fight between the Party Players and the Spanish Gangsters... (R.p.409) There were references to "Disciples" and the prosecution "implied that petitioner's dance group that Consisted of teenagers both girls and boys with ages ranging from 15 to 19 years of age, was itself a gang. Even when testimony in Court

(5)

. (GROUND FOUR) — Voir dire / Gang affiliation.

proved that it was simply a dance group of teenagers. Upon cross-examination of defense witness Parker the prosecutor quizzed this witness about his knowledge of various street gangs. (R.p. 673-74) The state called a rebuttal witness (Gomez) who testified that petitioner had told him he would have to join his gang. (R.p. 701) The prosecutor called petitioner " a gangbanging punk" in arguments to the jury. (R.p. 772-773)

In the trial of petitioner the prosecution (Madden) was allowed to repeatedly bring out evidence that petitioner was the Head of a gang called the Party Players, despite the fact such evidence was totally irrelevent and false. Witness after witness was asked about petitioner's affiliation with the party players and about "the purpose and nature" of the group. ( R.p. 275, 324 - 326, 347, 370, 409, 429, 475, 542, 647, 648, 653, 673-74, 701) During the prosecution's opening statements, closing arguments and entire trial, Prosecutor claimed petitioner was the founder, president of the Party Player stree gang, ( R.p. 227) and that petitioner had a motive to shoot a rival street gang leader (R.p. 229) When in fact prosecutor knew that shooting victim who died at the hospital several hours later of a single gun shot, was in no gang whatsoever, but simply an innocent bystander. References to gang affiliation were also part of the testimony of B. Rodriguez and M. Baltazar (R.p. 429, 478-79) Petitioner did not receive a fair and impartial trial because of his trial attorney's failure to adequately voir dire

(6)

. (GROUND FOUR) "Voir dire / Gang affiliation."

prospective jurors regarding their bias and prejudices about street gangs. American Bar Association standards as well as the Courts made it clear that a lawyer should prepare himself prior to trial to discharge effectively his function in the selection of the jury before 1977, where both dates predate the petitioner's trial. Throughout Petitioners trial, the vital issue was about gangs. From opening statements and closing arguments, Prosecuter (Madden) reminded the jurors of the importance of gang testimony at trial. The jury heard testimony from numerous police officers assigned to gang units, police dectectives, and gang members. Given this list of witness, the importance of gang testimony at trial and the prejudice which was <u>attached</u> to such testimony, the trial Court should have questioned the prospective jurors to determine whether they harbored any gang bias or prejudice. Petitioner <u>Cannot</u> be held accountable for Constitutionally deficient trial or appellate Counsel. Petitioner is entitled to adequate representation, in court proceedings. Counsel failed on this issue at trial. And attorney Samuel F. Adam, Filed a Post-Conviction petition on May 28, 2002 asserting <u>only</u> an "Appredi" Sentencing claim. Petitioner has <u>Never</u> had one complete opportunity to show a substantial denial of his Constitutional rights. A fair and impartial trial has been denied where trial Counsel (and Court) failed to request prosepective jurors be questioned about their bias and prejudices against gangs and gang membership in Violation of The Illinois of U.S. Constitution. Therefore, Cause is shown and prejudice is established in petitioners claim for relief.

(7)

· (GROUND FIVE)—Cross-examination/plea-agreement.

Counsel failed to expose and present to the jury the true extent of the Five(5) year sentence afforded to Gonzales when he agreed to turn state witness and testify against petitioner. There evidently was an additional and quite significant plea-agreement for Gonzales' testimony against Petitioner was not recited and disclosed to the jury. In 1981 Gonzales had been charged and arrested for possession of a sawed-off 12-gauge automatic shotgun and also arrested for having sex with a 15-year old minor. In exchange for Gonzales testimony against petititioner, He would agree to a deal by the state of five (5) years, with time served in the county jail, making him eligible for release in a few months.

The court prevented the defense from mentioning in full form about any pending cases and plea-agreements made between Gonzales and the state in front of the jury. Counsel abandoned an important avenue of impeachment as to the states star witness, which would indicate that the witness is lying — and such impeachment "increases in sensitivity in direct proportion to the witness's importance to the states Case" Baltazar was the states other witness, he testified petitioner had told him about shooting at some people called "Night Crew." It is believed that Baltazar also had pending burglary case(s), which provided the opportunity for Baltazar to accept a deal from the state for his testimony against petitioner. It is also believed that Baltazar's brother S. Baltazar might have been assisted on a pending case that he had if his brother M. Baltazar

(2)

. (GROUND FIVE) Cross-examination/plea agreement,

agreed to testify against Petitioner. This Information was never provided to the jury which would have destroyed the states effort to bolster Baltazar as a witness. M. Baltazar had also "Admitted to testifying falsely to petitioners attorney Mark Berlin over the phone, but later decided not to come forward with the truth" (attorney Can varify this statement) IF jury had the opportunity to hear this information at trial, The jury would have been understandably suspicions OF this Criminal informants purpose of becoming a state witness. It is well-known fact that "Criminals who are rewarded by the government [by being granted leniency or immunity] for their testimony are inherently untrustworthy." The government must disclose any understanding or agreement it has with its witness. A conviction based on testimony implicating "Concealed incentives" to an important witness is potentially tainted, Defense counsel unreasonably failed to challenge these Vulnerable witnesses, bolstered and Vouched for by the prosecuter. Prosecutor consistantly spoke about gangs and petitioners gang affiliation to influence the jury's assessment of the evidence. Petitioners case was weak and the Co-defendant who was originally charged with the murder, became the central Source of the prosecutions case and _totally dependent_ on Gonzales as credible for the state. The prosecutor is an officer of the court whose duty is to present a forceful and truthful case to the jury, _not_ to win at any cost

(3)

. (GROUND FIVE) — Cross-examination/plea-agreement.

which includes promising leniency or plea-agreements in exchange for testimony by known criminals with pending cases such as Gonzales. Jurors were not offered the opportunity to hear cross-examination by defense counsel about plea-agreements made to Gonzales by the prosecutor concerning the arrangements that were agreed upon with his pending cases in return for his testimony against Petitioner. Judge denied defense counsel the right to question Gonzales about the existence of his plea-agreement concerning his two(2) pending cases of unlawful use of a weapon, being a sawed-off 12-gauge automatic shotgun, — and the second pending case was the charge of having sex with an underage minor of the age of 14 or 15 year of age. This cross-examination would have provided the opportunity to show the jury that witness had motive to lie and give false testimony in court against Petitioner. In this case against petitioner, the court and prosecutor had breached both (A) its duty to disclosed exculpatory evidence. (B) its duty to elicit testimony it knows to be false. The prosecutions misconduct so prejudiced his conviction as to undermine confidence in the jury's verdict. Gonzales was the "Central and Crucial Chief witness against petitioner. And jury had the duty as well as right to know the arrangements with regard to a cooperation agreement that existed between the witness(s) and the prosecution. It is not disputed that petitioner's conviction depended significantly on Gonzales testimony. Gonzales was the Central and Key witness against petitioner. And was originally charged with the murder of the victim before plea-agreement was made on the murder charge and two(2) pending cases that Gonzales was out on bond and fighting in court. If defense counsel

(4)

... (GROUND FIVE) Cross-examination / plea-agreement.

had the chance to cross-examine Gonzales on his plea-agreements with prosecutors. Defense Counsel could have shown cause to lie and give false testimony against petitioner, and show that his credibility was unreliable and untruthful. It is known fact that " the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendants life or liberty may **depend**." And in petitioners Case, Gonzales' possible interest in testifying falsely was anything but subtle. Jurors lack of Knowledge of agreement has prevented full appreciation of relationship. between goverment and Co-defendant who turned state witness against Petitioner.

The jury was unable to properly evaluate Gonzales testimony to its fullest potential since the full content of Gonzales' plea-agreement and actual sentence was not allowed and was hidden from the jury and not allowed to be explained and heard. Petitioner's rights to due process under the Fourteenth Amendment was violated by the government, And limitation of Cross-examination of Co-conspirator Violated defendant's Sixth Amendment right to confront adverse witness. Where a plea-agreement allows for some benefit or detriment to flow to a witness as a result of his testimony, the petitioner must be permitted to cross-examine the witness sufficiently to make clear to the jury what benefit or detriment will flow, and what will trigger the benefit or detriment, to show why the witness might testify falsely in order

(5)

Case 1:08-cv-00616   Document 1   Filed 01/28/2008   Page 26 of 34

to gain the benefit or avoid the detriment. The Constitutional right to cross-examine is subject always to the broad discretion of the trial judge to preclude repetitive and unduly harassing interrogations," but that limitation cannot preclude a defendant from asking, not only "whether [the witness] was biased" but also "to make a record from which to argue why [the witness] might have been biased,"(E)exposure of a witness' motivation in testifying is a proper and important Function of the constitutionally protected right of cross-examination. In petitioners case, the jury never got the opportunity to hear the Full-term of agreement made between Co-defendant turned Key witness for the goverment.

Defense Counsel if given the opportunity could have made clear to the jurors on why the Co-defendant turned witness had reason to testify falsely and could have provided information about his (Gonzales) two(2) pending felony cases. Petitioner suffered a violation of his constitutional right of Confrontation. In Petitioners Case, The Co-defendant who was to pled guilty in a plea-agreement on the pending murder charge and two pending case's for a total sentence of five(5) years to do two and one half years (2½) total years, became the States Chief witness against petitioner in order to have his sentence reduced. Defense Counsel had the right to cross-examine the Co-defendant rigoresly in order to disclose to the jury the purpose of his plea-agreement and credibility. To deny cross-examination of governments Chief witness who was originally charged with the murder, Violates petitioners Constitutional right to confrontation of a Key witness who was originally charged with Murder.

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _Mr. Joseph Max_, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _4TH_ day of _January_ 2008

_Mr. Joseph Max - N21823_
Affiant

IN THE
## UNITed STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

Mr. Joseph Max
Plaintiff,

v.

Warden, Kevin Gilson
Defendant

)
)
)
)    Case No. 81 C 2158
)
)
)
)

## PROOF/CERTIFICATE OF SERVICE

TO: Clerk

U.S. District Court
219 South Dearborn Street
Chigo, ILLinois. 60604

TO:

Richard A. Divine
Cook County States Attorney
300 Daley Center
Chige, IL. 60602

PLEASE TAKE NOTICE that on January 4, , 20 08, I have placed the
documents listed below in the institutional mail at Western IL. Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: Habeas Corpus Motions
1-Original and 2-Copies

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: January 4, 2008

/s/ Mr. Joseph Max
NAME: Mr. Joseph Max
IDOC#: N-21823
Western IL. Correctional Center
P.O. BOX 196
Mt. Sterling , IL 62353

Revised Jan 2002

**87 CC-2 Filed 1/21/87**

## Arthur J. Cieslik, Circuit Judge, Cook County Circuit

The Complaint alleged intemperate, rude and sexist remarks to women attorneys during official proceedings

Order of 7/30/87: Stipulation of the parties on the facts accepted and Respondent reprimanded.



(Exhibit - B)

08/03/2006   15:14   3123651688

# IN THE SUPREME COURT OF ILLINOIS

In the Matter of:                          )
                                           )     Supreme Court Rule M.R.
   MICHAEL JOHN MADDEN,                     )
                                           )     Administrator's No.
   Attorney-Movant,                        )
                                           )        89 CH   **636**
   No. 1726528.                             )

## MOTION

The undersigned, Michael J. Madden, respectfully represents to the Court:

1. That on May 9, 1977, Movant was licensed by this Court to practice law in the State of Illinois.

2. That Movant desires to have his name stricken from the Roll of Attorneys licensed to practice law in Illinois pursuant to Supreme Court Rule 762.

WHEREFORE, the undersigned moves this Court that his name be stricken from the Roll of Attorneys licensed to practice law in Illinois.

_Michael J. Madden_
Michael J. Madden

DATE: _Sept 12, 1989_

```
" OFFICIAL   SEAL "
BARBARA J. BRESINGHAM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/30/92
```

# FILED

### OCT 17 1989

ATTY REG & DISC COMM
CHICAGO

(Exhibit -A)

IN THE SUPREME COURT OF ILLINOIS

In the Matter of: )
)   Supreme Court Rule M.R.
MICHAEL JOHN MADDEN, )
)   Adminsitrator's No.
Attorney-Movant, )
)      89 CH **636**
No. 1726528. )

## AFFIDAVIT

Michael J. Madden, being first duly sworn, on oath states:

1. That he has filed a Motion to strike his name from the Roll of Attorneys admitted to practice law in this State.

2. That he has received from the Administrator of the Attorney Registration and Disciplinary Commission a copy of the Statement of Charges pending against him, a copy of said Statement being attached hereto.

3. That the Affiant's Motion to strike his name from the Roll of Attorneys admitted to practice law in Illinois is freely and voluntarily made.

4. That the Affiant understands the nature and consequesces of said Motion.

FURTHER AFFIANT SAYETH NOT.

_____
Michael J. Madden

Subscribed and sworn to before me
this /2x day of September 1989.

_____
NOTARY PUBLIC

" OFFICIAL  SEAL "
BARBARA J. BRESINGHAM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/30/92

# IN THE SUPREME COURT OF ILLINOIS

In the Matter of:                      )
                                       )
   MICHAEL JOHN MADDEN,                )      Supreme Court No. M.R.
                                       )      Administrator's No.   89 CH **636**
      Attorney-Movant,                 )
                                       )
         No. 1726528.                  )

## STATEMENT OF CHARGES

John C. O'Malley, Administrator of the Attorney Registration and Disciplinary Commission, by his attorney Thomas P. Sukowicz, states that on the date Michael John Madden signed a motion to have his name stricken from the Roll of Attorneys admitted to practice law in this State, the following matters were pending against him:

### Investigation No. 88 CI 3630

Movant was charged with making false statements to two clients who were represented by Movant under a group legal service plan and under no obligation to pay any fee to Movant and inducing them to pay him $2,400 and $4,000, respectively, as additional legal fees.

Respectfully submitted,

John C. O'Malley, Administrator
   Attorney Registration and
   Disciplinary Commission

BY: _Thomas P. Sukowicz_
         Thomas P. Sukowicz

Thomas P. Sukowicz
Counsel for Administrator
203 North Wabash Avenue
Suite 1900
Chicago, Illinois  60601
Telephone: (312) 346-0690

FILED

OCT 17 1989

ATTY REG & DISC COMM
CHICAGO



STATE OF ILLINOIS
## SUPREME COURT CLERK
SUPREME COURT BUILDING
SPRINGFIELD 62706

FIRST DISTRICT OFFICE
ROOM 30-129
RICHARD J. DALEY CENTER
CHICAGO 60602
(312) 793-1332

JULEANN HORNYAK

CLERK OF THE COURT

(217) 782-2035

December 6, 1989

Mr. Thomas P. Sukowicz
Attorney Registration and
  Disciplinary Commission
203 North Wabash Ave., S#1900
Chicago, IL 60601

Mr. Clifford C. Johnson
Attorney at Law
6006 159th Street, #B
Oak Forest, IL . 60452-2904

THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:

M.R. 6142 - In re:  Michael John Madden.  Disciplinary Commis-
sion.

The motion by Michael John Madden to strike his
name from the roll of attorneys licensed to
practice law in Illinois pursuant to Supreme Court
Rule 762 is <u>allowed</u>.

The mandate has issued forthwith.

JH/hc
cc:  Mr. Michael John Madden
     Mr. Kenneth Jablonski, Clerk
     Atty. Reg. & Disc. Comm.

# FILED
DEC - 8 1989

ATTY REG & DISC COMM
CHICAGO

FORM NO. L

# State of Illinois
## Supreme Court

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the _____thirteenth_____

day of ___November___, 19 _89_.

Present: Thomas J. Moran, **Chief Justice**

**Justice** Daniel P. Ward          **Justice** Howard C. Ryan
**Justice** William G. Clark        **Justice** Ben Miller
**Justice** John J. Stamos          **Justice** Horace L. Calvo

On the ___6th___ day of ___December___, 19 _89_, the Supreme Court entered the following judgment:

FILED

DEC - 8 1989

ATTY REG & DISC COMM
CHICAGO

In re:

M.R. 6142

Michael John Madden
421 Washington Street
Barrington, IL 60010

)
)
)    Atty. Reg. &
)    Disc. Comm.
)    89 CH 636
)
)

IT IS ORDERED THAT the motion by Michael John Madden to strike his name from the roll of attorneys licensed to practice law in Illinois pursuant to Supreme Court Rule 762 is allowed.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court this ___6th___ day of ___December___, 19 _89_.

*Juleann Hornyak*

**Clerk,**
**Supreme Court of the State of Illinois**