

# SEVENTH CIRCUIT COURT of APPEALS

No. _____

**FILED**

UNITED STATES of AMERICA, ex rel,

JOSEPH MAX,

Petitioner,

JUL 1 0 2008

Jul 10. 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 08 C 0616

vs.

KEVIN GILSON, WARDEN,

Respondent.

The Honorable
Matthew F. Kennelly,
Judge Presiding.

## PETITIONER, JOSEPH MAX'S APPLICATION FOR A CERTIFICATE OF APPEALIBILITY

# TABLE OF CONTENTS

Application For Certificate of Appealibility ..... 27 pages

Affidavits / New discovered Evidence

Habeas Corpus Petition, filed in Federal District Court, Northern District, Eastern Division

Respondent's Motion To Dismiss

Petitioner's Response To Respondent's Motion To Dismiss

Petitioners "Motion IN Pendenti" or Alternately to "Dismiss without Prejudice"

# SEVENTH CIRCUIT COURT OF APPEALS

UNITED STATES OF AMERICA, ex rel,

      JOSEPH MAX,

          Petitioner,

                             No. 08 C 0616

vs

                             The Honorable
                             Matthew F. Kennelly,

KEVIN GILSON, WARDEN,
                             Judge Presiding.

          Respondent.

## MOTION FOR A
## CERTIFICATE OF APPEALABILITY

ON JANUARY 4, 2008, petitioner, Joseph Max, filed a habeas petition in the Northern District Court, Eastern Division.

ON April 18, 2008, the Respondent filed a "Motion To Dismiss" for petitioner Max's failure to file And recieve, through order of Court, A Certificate of Appealability.

ON May 30, 2008, petitioner filed his response to Respondent's Motion To Dismiss by filing a "Motion in Pendenti" or in the Alternative to "Dismiss without Prejudice" until petitioner has filed his Certificate of Appealability

And this Honorable Court entered ORDER thereon.

Joseph Max, the Applicant herein, moves this Honorable Court for AN ORDER Authorizing the District Court for the Northern District of Illinois, Eastern Division, to consider his Application for a writ of habeas corpus And petitioner offers the following in support thereof:

## NEWLY DISCOVERED EVIDENCE

1.) The Applicant has discovered new evidence of prosecutorial misconduct, perjured testimony, subornation of perjury And, new evidence of a trial officiated by a biased trial judge. The discovery of this evidence, the subornation of perjury by the prosecution And the trial judge's presumption of petitioner's guilt, worked in tandum to deny your applicant the right to a fair trial.

2.) The applicant alleges factual and other grounds not Adjudicated on the hearing of the earlier Application for the writ. And, that the factual predicate for these claims could not have been discovered and presented previously, by him, through the exercise of due dilligence And that the facts underlying said claims, if proven, And viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional

ERRORS, NO REASONABLE factfinder would have found your
Applicant guilty of the offense of murder.

3.) That Applicant plead NOT guilty and still presents
     in his claim of innocence. Asserting actual
innocence, Applicant presents new evidence to substantiate his
claim. Evidence that will show beyond a reasonable doubt
that he is innocent; that his trial was a mockery of
justice beset by a plethora of errors of constitutional
magnitude; from ineffective assistants of counsel and
prosecutorial misconduct to a bias trial judge who denied
Applicant the right to defend himself; allowed the introduction
of prejudicial evidence; denied proper jury instructions; and
sentenced Applicant to an illegal term of imprisonment.

## PROSECUTORIAL MISCONDUCT; PERJURY: SUBORNATION OF PERJURY

During the proceedings at trial the prosecutor, through
the testimony of Timiteo Sosa (and Juvenile Gomez), introduced
evidence of other crimes which the petitioner had never
been charged with or convicted of; crimes the applicant
has consistently claimed never occurred and; crimes which
were irrelevant to the charges which applicant was on
trial for.

The prosecution presented the testimony of Juvenile Gomez concerning an unrelated crime in which applicant Max had been charged with unlawful restraint and robbery but had not yet been tried for. Since this crime, this crime, had nothing to do with the facts in applicant's murder trial, the admission of this evidence served no purpose other than to prejudice applicant before the jurors.

Timateo Sosa testified, at applicant's murder trial, that petitioner Max had committed an act of robbery against him at his place of employment, in that Max had taken by threat of force one 9mm handgun and $15.00 United States currency — all items the property of his employer, Mr. Gomez.

Sosa further testified that this robbery took place at a restaurant named "Gomez Tacos" and that during the time of the robbery the place was open and occupied by customers and other employees.

Sosa's testimony was completely unsubstantiated by any other evidence — no reputable witnesses to support his claims or corroborate his testimony and no evidence to prove, by even a requisite degree of belief, that the crimes he accused the petitioner Max of, had, in fact, occurred.

Sosa's testimony was insufficient to establish any of the facts alleged before petitioner's jury during his trial for murder.

A lack of any evidence to corroborate Sosa's robbery claim demonstrates that the evidence may indeed have been manufactured by the witness

4.

SoSA, with the knowledge and consent of the prosecuting attorney, SoSA's employer — the owner of the restuarant, Mr. Gomez — and Gomez's son Juvenile Gomez.

The owner of the restuarant, were SoSA worked, was the father of the State's complaining witness in another criminal case (pending at the time of applicant's murder trial) against the petitioner. The father, as alleged by SoSA, was the owner of the property taken in the robbery, viz: 9mm handgun and $15.00 united states currency. Yet, the father, Gomez, did not testify or offer deposition concerning this alleged offense.

There existed no proof that the father ever owned a 9mm handgun or that he even possessed a Firearm Owners Identification Card (FOIC), and no proof, in fact, that the gun actually existed. Yet, the prosecution, through the testimony of SoSA wanted applicant's jury to believe that a man (max) with no gun, robs a man with a gun of that gun and his money.

Even though the restuarant was open at the time of the alleged robbery, no customers or employees were called as witnesses; no police reports, no police investigation because the police were never called either by SoSA or the owner of the property taken in the robbery, even though SoSA testified as to having personally known the

the perpetrator of the robbery offense to be the petitioner, MAX.

A red flag had been raised in the office of the prosecution that SoSa's claims were worthless and perjurious. In addition to his incredulous claims he also knew that SoSa was a friend of his complaining witness in another criminal case against the petitioner and that witness — Juvenile Gomez — was the son of SoSa's employer; they came to the prosecutor's office together on numerous occasions. Nonetheless, prosecutor Michael Madden presented SoSa's testimony before petitioner's jury, bolstered it with his own comments, giving it the ring of truth, and creating in the minds of the jurors that petitioner was a bad person, one quite capable of committing the offense of murder, the crime he was being tried for.

If the prosecutor, especially this one, who pursued the murder charges against petitioner so aggressively, felt there was an iota of proof in anything SoSa said he would have charged the petitioner with those offenses since the statute of limitations had not yet expired. Under Illinois law and legal precedent a prosecutor is not at liberty to abuse his discretion in determining whether to prosecute case; "... in so doing, State's Attorney has responsibility of evaluating evidence and other pertinent factors in determining which offense can and should be ~~charged~~ properly charged." <u>People v. Deskin</u>, 1978, 17 Ill. Dec. 757, 60 Ill. App. 3d 476, 376 N.E. 2d 1086.

An indictment, after all is only formal charge and does not even require degree of and quality of proof necessary for conviction. People v. McCrackin, 1965, 61 Ill. App. 2d. It may be properly based solely on hearsay People v. Wirth, 1979, 32 Ill. Dec. 725, 77 Ill. App. 3d 253, 395 N.E.2d 1106 And cannot be challenged as being based in part on incompetent evidence. People v. Jones, 1960, 19 Ill.2d 37, 166 N.E.2d 1. And, since the prosecutor failed to charge or indict petitioner for the crimes SoSa claimed Max committed against him the Court should not have presumed from the allegations alone that a crime had occured, and, most certainly should not have allowed SoSa to testify before petitioner's jury about that crime.

Your applicant, since the time of his trial, has discovered evidence that will prove this crime, alleged by SoSa, never occured; that SoSa, the owner's son, and prosecutor Madden had by design or circumstance, entered into and/or played a part in a conspiracy to deprive the petitioner of his right to a fair trial through the presentation of perjured testimony.

The threads of this conspiracy began to unravel when the applicant realized SoSa's employer, Mr. Gomez, was none other than the father of Juvenile Gomez who was the complaining witness against

him in Another prefabricated criminal case wherein the petitioner had been charged with the unlawful Restraint And Robbery of Juvenile Gomez, A case Also prosecuted by Madden And tried before the same judge, Arthur J. Cestick, in A bench trial, after petitioner's murder trial Ended.

Since the time of petitioner's trial And conviction he has heard from numerous people that Juvenile Gomez And Timiteo Sosa have often bragged About how they, And the State's Attorney, had "gotten rid of Max". Although petitioner had been unable to get someone to confirm Sosa And Gomez's claims, through affidavit or deposition, he personally knows them to be true. However, prior to petitioner filing his writ of habeas corpus in the Federal District Court, he discovered through one Cynthia Nunez that while she was At a dance club she ran into Benito Rodriguez, A witness who was called to testify for the prosecution At petitioner's murder trial. It was the prosecution's theory that petitioner had Attempted to shoot Rodriguez As a rival gang member who had dated his sister but shot And killed An innocent by-stander named Stanley Kamosa instead. Rodriguez did not do much, if Anything to bolster the prosecution's case. He, in fact, turned out to be a better defense witness, testifying that he And the petitioner had never had Any problems.

What's important About this chance meeting Nunez had with Rodriguez were certain things he

Revealed to her about petitioner's trial. Rodriguez
related that he, Sosa and J. Gomez were instructed
by the prosecutor, Madden, on how to act emotional
in front of the jurors; to be sure to speak about
gangs whenever possible; and most importantly that
Timiteo Sosa and Juvenile Gomez had lied about the
other crimes they claimed petitioner committed against
them, with the "Knowledge and Approval" of prosecutor
Madden. (See Affidavit of Cynthia Nunez, Appendix
Hereto)

The petitioner has long known that Mark Baltazar
also committed perjury and was encouraged to do so by
prosecutor Madden. Baltazar's testimony was damaging to
petitioner's defense. and conscientiously disturbing to himself
since he came, of his own accord to petitioner's Attorney
Marc Berlin to confess he had lied when testifying; that
he had wanted to tell the truth but was prevented from
doing so because of his own legal troubles.

Petitioner does not now remember what reasons
were given by Mr. Berlin for not presenting this evidence
to the Court or spreading it of the Record. And, petitioner
has not deliberately withheld this newly asserted ground
as he had made it known to his appellate Attorney and
Attorney Sam Adams who represented him post-trial. This,
and other issues petitioner had wanted and requested
his legal representatives address, were simply ignored.

Such determinism left petitioner at a loss on how
to apprise the Courts of these errors. Petitioner's

staunch determination, years of legal research and study, has now led him to the belief that he can, after all, raise objection to the many forms of constitutional violations that occured during his trial AND he could not, heretofore, raised these issues without such Knowledge. Petitioner has also discovered that these issues do have merit and support of legal precedence.

The issues petitioner now appraises the Court of are strengthened by newly discovered evidence and evidence withheld by prior legal counsels for petitioner AND shed New light on the Record as a whole. The manner in which petitioner's case was prosecuted by ASA Madden is a blatant example of the gross misconduct, illegal and deceptive practices which eventually lead to his disbarment, viz: ¶ soliciting and presenting false testimony; presenting evidence of other crimes before petitioner's jury which petitioner had never been charged with or convicted of, crimes Madden knew had never occured; and infecting the entire trial with inflamatory testimony of gangs, something never proven yet used ~~solely~~ to prejudice petitioner before his jurors.

## BIASED TRIAL JUDGE

Petitioner has, since the time of his trial, complained to his attorneys (trial, Appellate, post) that he felt the trial judge, Author J. Cieslik, was biased towards him.

During his murder trial, family members of the victim attempted to attack petitioner in the court room. While sheriff baliffs were busy trying to control them petitioner was removed from the courtroom and taken to a "holding cage" and then to Judge Cieslik's chambers where he was informed by the judge that from now on he would be brought into the court room through his chambers, thus avoiding, as much as possible, contact with the victim's family. Judge Cieslik went on to state, in front of petitioner's attorney, Joseph Cody, baliff Swanson, and the judge's personal assistant (who carried a chrome handgun), that he "did not blame the family for trying to harm petitioner since he was responsible for the death of their son." Judge Cieslik's comments were made prior to the conclusion of the presentation of evidence, before defense counsel presented it's case and prior to judgement of the jurors.

Prior to filing his petition for writ of habeas corpus, before the Federal District Court, petitioner learned that his brother, Robert Max, had ran into a man he knew from petitioner's trial); that man being none other than baliff Swanson who worked in Judge Cieslik's court room during the time of petitioner's trials. Baliff Swanson related to Robert Max: "Your brother never had a chance at trial. The judge had it in for him." Swanson did not elaborate further nor was he encouraged to do so by Robert Max, the meeting was by chance; brief; the conversation short, but; the contents now supportive

of petitioner's own knowledge of Judge Cieslik's presumption of his guilt and subsequent prejudice towards him. A prejudice which also explains and is exemplified by the Judge's rulings on the evidence at petitioner's trial, e.g., the allowance of other crimes evidence; limitations on defense' cross-examination of witnesses; the allowance of an extaodinary amount of unfounded, and unproven, gang testimony and failure to question jurors of any potential bias they may have had towards gangs, knowing beforehand that the theory of the State's case was gang related and evidence of gang activity was going to be presented in evidence before said jurors.

   If petitioner, MAX, is allowed to present his case before the Federal District Court he will prove the constitutional violation claims of a biased trial judge and prosecutoainal misconduct.

   The Courts have declared that the prosecution must act within the bounds of the profession and observe the rights guaranteed to the petitioner by the Constitution. In Greene, the Court stated: that "the role the prosecution plays in the search for truth in criminal trials is very important." Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed 2d 286 (1999), and in Napue, "It is the prosecution's duty to assure petitioner has a fair and impartial trial and the state may not use false evidence to obtain a conviction." Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed 2d 1217 (1959). In Wallach

And <u>Stofsky</u>, that if "the prosecution knowingly permits the introduction of false testimony reversal is "virtually automatically." <u>U.S. v. Wallach</u>, 935 F.2d 445 (2nd Cir. 1991); <u>U.S. v. Stofsky</u>, 527 F.2d 237 (2nd Cir. 1975). In addition, applicant's due process rights are likewise violated where the state, although not soliciting false evidence, allows it to go uncorrected. <u>Alcorta v. Texas</u>, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d (1957); <u>Pyle v. Kansas</u>, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942).

The prejudice suffered from the bench because of the trial judge's bias towards applicant has denied him a trial by impartial judge and cannot be considered harmless. <u>Arizona v. Fulminate</u>, 499 U.S. 279, Ill. S.Ct. 1246, 113 L.Ed. 2d 302 (1991).

It was error of the court to allow the admission of other crimes evidence as it had no probative value other than to prejudice applicant before the trier of fact. And, it was error of the court to consider other crimes evidence and gang testimony (when it was not proven the crime was gang related) as aggravating factors in the term of sentence it imposed. In addition, the court's bias towards the applicant max was demonstrated by the term of sentenced imposed. The State did not request nor was the prosecution ~~aware~~ or applicant aware that an enhanced/extended term was going to be imposed. The procedure here violated applicant's right to a fair trial provided him by the provisions of section 2 of Article II of the Illinois Constitution, S.H.A. and by section 1 of the 14th Amendment to the Constitution of the United States. <u>People v. Lewis</u>, 413 Ill. 116, 108 N.E. 2d 473 (1952); <u>People v. Harrison</u>, 108 Ill. Dec. 649,

508 N.E.2d. 1226, 156 Ill. App. 3d, 113 Ill. Dec. 309, 515 N.E.2d 118, 116 Ill.2d 567.

Applicant's constitutional right to present a defense, as well as his right to cross-examine witness Lonnie Gonzales — to challenge his credibility — was violated by the trial court's action. And, failure of the trial court to properly admonish the jury & through proper instructions on the suspect nature of the testimony of Accomplice Lonnie Gonzales; limiting instructions on gang testimony; and limiting instructions on other crimes evidence, in order to ensure a fair determination of the case constitutes plain error. People v. Ayers, 265 Ill. Dec. 82, 771 N.E.2d 1091.

## ACTUAL INNOCENCE

The state was unable to prove a motive for the crime. The prosecutor first alleged that it was gang related and infected the trial with an enormous amount of highly prejudicial gang-related testimony. Unable to prove this theory the prosecution then insisted the crime was one of a personal nature resulting from applicant's sister's relationship with the intended victim. Neither theory was supported by the evidence or facts sufficient to convict but were introduced nonetheless to prejudice applicant before the jurors. The only evidence connecting applicant to the offense was the testimony of his co-defendant, Lonnie Gonzales, who perjured himself at trial and made a sweetheart of a deal with the state for his testimony against your applicant; a deal which the

14.

court would not allow defense counsel to expose to the jurors but one that the applicant has since discovered was an actual sentence of two-and-one-half years for murder, unlawful use of weapon offense and statutory rape charge. The limitations the court placed on cross-examination of Gonzales was an abuse of discretion and severely prejudiced rights of your applicant as to require a new trial particularly where there exist evidence outside the record that raises new doubts as to Applicant's guilt.

    In reference to the gang testimony, the probative value, if any, of the evidence was out weighed by the resulting prejudice and compounded by the fact no cautionary instruction were given by the court to explain it's introduction and reduce it's prejudicial impact on the jurors. This court has stated it "is cognizant of the insidious quality of such evidence and the damage it can do." United States v. Irwin, 87 F.3d 860, 864 (7th Cir. 1996); United States v. Rodriquez, 925 F.2d 1049, 1053 (7th Cir. 1991); United States v. Butler, 71 F.3d 243, 250 (7th Cir. 1995). It should also be noted that since the Gang Crimes Unit of the Chicago Police Department did not list the Party Players as a Chicago street gang prosecutor Madden called a fellow brethern from the States Attorney's office to testify as to the "similarites" between the Party Players and gangs. The use of this testimony, while prejudicial, still failed to show that any member of the Party Players had even been accused of, or charged with, any gang activity.

    It was only through the perjured testimony of Lonnie Gonzales; the introduction of prejudicial gang testimony; the

15.

introduction of other crimes evidence; prosecutorial misconduct; ineffective assistance of counsel; And the limitations on applicants defense by a bias trial judge that Applicant was found guilty. No actual or real proof of the facts necessary for conviction was ever introduced by the prosecution. No circumstantial evidence, no physical evidence And no credible witnesses to substantiate the charges.

WHEREFORE, your applicant, Joseph Max, believes he has met the threshold requirement allowing the Federal District Court to entertain his Habeas petition for relief from state court judgement in that he is in custody under the conviction of sentence under attack and in violation of the Constitution — 28 U.S.C.A. § 2254 (a); that he has made a prima facie showing that his Application satisfies the requirements of 28 U.S.C.A. § 2244 (2), (3) and subsections thereof; that if he is allowed to proceed in the Federal District Court and develope the record, through Affidavit and subpoena, he will produce the following witnesses to give evidence in support of his claims of newly discovered evidence which resulted in a fundamentally unfair trial: Cynthia Nunez, Joseph Max, Senior, Robert Max, Benito Rodriquez, Charles Russell, Mark Baltazar, Shaw Baltazar, Bailiff Swanson, Attorney Joseph Cocly, Attorney Mark Berlin, Judge Auther J. Cieslik, Timateo Sosa, Juvenile Gomez; Mr. Gomez (Juveniles father), (former prosecutor) Michael Madden, Maribel Valash and Lonnie Gonzales.

16.

Through the testimony of witnesses facts will emerge which shall prove sufficient to establish numerous violations of petitioner's constitutional rights. The newly discovered evidence is, in fact, new and the issues raised in this application and in applicant's habeas petition, presently before the Federal District Court, Northern District, Eastern Division, have not previously been presented in any prior federal proceeding.

Through newly discovered evidence of prosecutorial misconduct, applicant will demonstrate to the Court how the presentation of other crimes evidence unduly prejudiced his defense before the trier of fact. Applicant intends to prove this claim, in Federal Court, if his Certificate of Appealibility is granted by presenting, in part, the following:

① That applicant was entitled to have his guilt or innocence determined solely with reference to the crime with which he was charged. *People v. Connors*, 82 Ill. App. 3d 312, 37 Ill. Dec. 771, 402 N.E. 2d 773 (1980);

② That this type of evidence is always prejudicial to the defendant — *United States v. Powers*, 978 F. 2d 354, 361, (7th Cir. 1992) — and its erroneous admission "carries a high risk of prejudice and ordinarily calls for reversal." (quoting) *People v. Knight*, 242 Ill. Dec. 842, 846, 722 N.E. 2d 331 (1999); quoting *People v. Placek*, 184 Ill. 2d 370, 388, 235 Ill. Dec.

44, 704 N.E.2d 393 (1998), quoting People v. MANNING, 182 Ill.2d 193, 214, 230 Ill. Dec. 933, 695 N.E.2d 423 (1998);

③ That its prejudicial effect outweighed any possible probative value;

④ That the evidence was introduced merely to establish Applicants propensity to commit crimes. People v. Lindgren, 37 Ill. Dec. 348, 349, 402 N.E.2d 238; Michelson v. United States (1948), 335 U.S. 469, 475-76, 69 S.Ct. 213, 218-19, 93 L.Ed 168, 173-74; United States v. MYERS, C.A. 5 (Fla.) 1977, 550 F.2d 1036; Federal Rules of Evidence, Rule 404 (b) 28 U.S.C.A.; UNITED STATES v. Shackleford, 738 F.2d 776 (7th Cir. 1984);

⑤ That the prosecution did not establish that Applicant, in fact, committed the prior bad Act. Federal Rules Evid. Rule 404 (b) And Rule 403; United States v. MANZON, 869 F.2d 338, 344 (7th Cir.) cert. denied, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989) And even if the evidence was somehow relevant, based on the evidence, the jury could not by a preponderance have reasonably determined that the prior bad act occured. Huddleston v. United States, 485 U.S. 681, 688, 108 S.Ct. 1496, 1501, 99 L.Ed 2d 771 (1988); see also United States v.

18.

LEONARD, 524 F.2d 1076, 1090-91 (2nd Cir. 1975), cert denied, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976);

⑥ That the nature of the extrinsic evidence was qualitatively different than that of the acts charged in the indictment; it was not similar or relevant to the offense or to establish any fact material to the prosecution of applicant on the murder charge. People v. McDonald (1975), 62 Ill.2d 448, 343 N.E.2d 489; People v. Stewart (1984), 105 Ill.2d 22, 85 Ill. Dec. 241, 473 N.E.2d 840; People v. Peeples (1993), 155 Ill.2d 422, 456, 186 Ill. Dec. 341, 616 N.E.2d 294 ("the admissibility of evidence is dependant upon a showing that it is legally relevant.");

⑦ That neither Juvenile Gomez or Timateo Sosa's testimony; concerning other crimes, was related to the facts of applicant's murder trial; did not relate to motive; did not involve a seperate criminal act undertaken in connection with the charged criminal activity and; was not intertwined with the evidence regarding the charged offense;

⑧ That it was an abuse of the Court's discretion in admitting evidence of other crimes. United States v. Czarnicki, 552 F.2d 698 (6th Cir.) cert denied

431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed. 2d 257 (1977);

⑨ That the Court of Appeals Reviews Admission of other crimes evidence for Abuse of discretion. 28 U.S.C.A. Fed. Rules Evid. Rule 404(b); United States v. MAYS, 822 F.2d 793, 797 (8th Cir. 1987);

⑩ That the court did not balance the evidence in terms of its probative value and prejudicial effect. UNITED STATES v. OSTROWSKY, 501 F.2d 318, 323 (7th Cir. 1974);

⑪ That the court did not offer a principled basis for allowing the other crimes evidence;

⑫ That the court erred by failing to give the jurors limiting instructions as to the limited use of the other crimes evidence;

⑬ That the introduction of other crimes evidence which your applicant had never been charged, tried or convicted of, was done so contrary to the Rules of Evidence — 28 U.S.C.A. Fed. Rules of Evid. Rule 401, 402, 403 and 404 (B);

⑭ That the presentation of the evidence (of other crimes) was the result of prosecutorial

misconduct and an abuse of discretion by the trial court; that there was no credible evidence that the crime occured against state witness SOSA and the impact of the evidence was a contributing and possible pivital factor, in the jurors decision to convict;

⑮ That the improper admission of such evidence will warrant reversal if a material factor in Applicants conviction, UNITED STATES v. YORK, 933 F.2d 1343, 1349 (7th Cir. 1991).

If a Certificate of Appealibility is granted by this court, through newly discovered evidence, Applicant will prove the prosecution committed subornate acts by injecting into the proceedings improper, prejudicial and inflamatory evidence of "gangs" and encouraged witnesses against the Applicant to do so. And, that even after the prosecution's theory of a gang related murder collapsed, he continued to flood the trial with gang testimony. Proof of these and other acts of prosecutorial misconduct shall be demonstrated to the Federal court, in part, by the following:

ⓐ That the victim of the crime was not in a gang; that the Party Players was not a gang; that Applicant was not in a gang; that the

prosecution's alleged victim (intended), Benito Rodriguez, testified that neither he nor any of his gang ever had a problem with Applicant;

② That the prosecution was unable to prove Applicant was a gang member; that no evidence was ever introduced to show that Applicant or any member of the group of young men who called themselves Party Players were ever involved in any type of gang activity — no signs, symbles or behavior associated with gangs or gang structure.

③ That the prejudicial effect of evidence of gang affiliation substantially outweighed any possible probative value and the admission of gang evidence was as substantial as the prejudice stemming therefrom;

④ That normal negative connotations of gang membership were enhanced by the prosecution's frequently emphasized negative aspects of gang membership — from opening statements to closing arguments. Prosecutor Madden's extensive remarks concerning gang activity directed the jury's attention from the issues in the case;

⑤ That the evidence was to weak to support the introduction of the type and amount of prejudicial gang testimony admitted in this case;

22.

⑥ That the court reversed its ruling and allowed the introduction of gang evidence and that it erred in doing so;

⑦ That the record reveals the trial judge exhibited a strong personal bias towards gangs and newly discovered evidence demonstrates his personal bias towards the applicant;

⑧ That the court failed to admonish the jury about gang prejudice and did not question prospective jurors concerning any possible gang prejudices;

⑨ That the Seventh Circuit Court of Appeals has clearly stated there is no question gang affiliation evidence is prejudicial to a criminal defendant and "requires careful consideration by district courts in determining the admissibility of gang membership and gang activity evidence." United States v. Irvin, 87 F.3d 860, 864 (7th Cir. 1996); also United States v. Rodriguez, 925 F.2d 1049, 1053 (7th Cir. 1991); United States v. Butler, 71 F.3d 243, 250 (7th Cir. 1995). "Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior." IRVIN, at 865.

23.

Applicant believes he has shown that a Certificate of Appealibility is warranted. He believes he has met the threshold requirement allowing the federal court to entertain his habeas petition for relief from state court judgement in that he is in custody under the conviction of sentence under attack and in violation of the constitution, 28 U.S.C.A. § 2254 (a); Finkelstein v. Spitzer, 455 F.3d 131.

Applicant believes he was convicted through a judicial process which was fundamentally defective.

Because applicant was prejudiced by the improper admission of evidence of other crimes he believes he is entitled to a new trial.

Applicant believes he is entitled to new trial because of the prejudicial admission of gang testimony.

He believes he is entitled to a new trial because of ineffective assistance of trial, appellate and post-conviction counsels. In light of said counsels failure to present and/or properly articulate applicants meritorious claims on appeal or other collateral proceedings, applicant would request this Court grant him a Certificate of Appealibility. Anderson v. Superintendant, El Mira Correctional Facility, E.D. N.Y. 2005, 360 F. Supp. 2d 477, Habeas Corpus.

He believes he is entitled to a new trial because of a biased trial judge.

He believes he is entitled to a new trial because of prosecutorial misconduct.

He believes he should recieve a new trial because of the state's use of perjured testimony.

24.

He believes his conviction should be overturned and he should be released from custody because the state failed to prove him guilty of the offense charged beyond a reasonable doubt.

He believes he has made a prima facie showing that he has satisfied the requirements of subsection (2)-(3) of ch. 153 Habeas Corpus, 28 § 2244.

He believes that the imposition of a procedural bar would constitute a miscarriage of justice Sawyer v. Whitley, 505 U.S. 333, 339 (1992).

He believes that in a habeas corpus proceeding the evaluation of evidence is for the Court.

He believes that the issues he has presented to the Federal District Court, in his habeas petition, are meritorious, borne out by the record and supported by legal precedent.

He believes he recieved an illegal sentence since he was not made aware of the punishment he would recieve and, too, he was denied a fair sentencing hearing in that the court considered improper factors in aggravation.

He believes that Congress did not intend for interpretation of phase "second or successive" to preclude relief for alleged procedural due process violations relating to the allegations applicant has made in his Application for Certificate of Appealibility and did not intend to preclude relief where applicant is not abusing the writ. In Re Cain, C.A.5 1998, 137 F.3d 234.

He believes he is entitled to relief under the due process clause of the 14th Amendment U.S.C. and the

25.

6th Amendment Right to counsel, to present A defense, and the 8th Amendment protections against cruel and unusual punishment.

He believes newly discovered evidence warrants A Certificate of Appealibility.

He believes that the integrity of the trial was destroyed by the prejudicial nature and the cumulative effect of all errors alleged herein and in his habeas petition presently pending before the Federal District Court.

He believes he should be granted A Certificate of Appealibility on statue of limitations (if he has exceeded them) and the availability of equitable tolling issues due to the complexity of the issues presented, by pro-se Applicant, and there grave impact.

He believes he has made A substantial showing of the denial of constitutional rights and that the issues presented are adequate to deserve encouragement to proceed further.

All this Applicant not only believes to be true but believes he can, if allowed, prove the truth of his beliefs.


Based on the facts presented herein, those presented in the hereto attached Affidavits and those yet developed from the newly discovered evidence, Applicant, Joseph Max, requests approval of his Application for Certificate of Appealibility by this Honorable Court.

Respectfully Submitted,

Joseph Max.

Joseph MAX, Applicant

Reg. No.  N-21823

P.O. Box  1900

CANTON, IL.  61520


June 30, 2008

DATED

STATE of ILLINOIS
County of Fulton                SS

## AFFIDAVIT

I, Joseph Max, Affiant herein and Applicant in the Application for Certificate of Appealibility, being first duly sworn upon oath depose and states that the following Affidavit is true and correct to the best of my knowledge and beliefs for all just and meritorious purposes. In support thereof I state as follows:

That I have read the contents of my Application for a Certificate of Appealibility and believe them to be true and correct to the best of my own knowledge.

That the affidavits of Cynthia Nunez, Joseph Max, senior, Robert Max and Charles Russell are included herein and are signed by the persons that are purported to be.

Further Affiant sayeth naught.

Joseph Max
Joseph Max, Affiant

Subscribed and sworn to before me this 3rd day of July, 2008

_____
Notary Public

"OFFICIAL SEAL"
Don A. Burkhart
Notary Public, State of Illinois
My Commission Exp. 08/22/2008

IN THE

UNITED STATES DISTRICT COURT
NORTH DISTRICT OF Illinois

Joseph Max                          )
Plaintiff,                          )
                                    )   Case No. 08 C 0616
        v.                          )
                                    )
Kevin Gilson, Warden                )
Defendant                           )

## PROOF/CERTIFICATE OF SERVICE

TO: Michael W. Dobbins-Clerk          TO: U.S. Court of Appeals
Clerk of U.S. District Court              7th Circuit Court of Appeals
219 South Dearborn Str.                   219 South Dearborn Str.
Chicago, Illinois 60604                   Chicago, Illinois 60604

PLEASE TAKE NOTICE that on June 30,        , 2008, I have placed the
documents listed below in the institutional mail at IL, River Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: 5-Copies of Motion For A Certificate
of Appealability, To Above locations.
(4 Copies to 7th Circuit Court / 1 Copy to District Court.)

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: June 30, 2008              /s/ Joseph Max
                                 NAME: Joseph Max
                                 IDOC#: N-21823
                                 IL River Correctional Center
                                 P.O. BOX 1900
                                 CANTON          , IL 61520

Revised Jan 2002

STATE OF ILLINOIS

COUNTY OF FULTON    SS

## AFFIDAVIT

I, Joseph MAX, being first duly sworn on oath deposes and states that the following affidavit is true and correct to the best of my knowledge and beliefs for all just and meritorious purposes. In support thereof I state as follows:

(1.) That I am the Affiant herein, the applicant in the application for a Certificate of Appealability, and the petitioner in the petition for writ of habeas corpus presently before the federal district court, Northern District, Eastern Division;

(2.) That I am presently serving a 70 year sentence, imposed the by the Circuit Court of Cook County, for the crime of murder;

(3.) That I am filing this Certificate of Appealability based on newly discovered evidence of prosecutorial misconduct, a biased trial judge and the issues of prejudice resulting therefrom;

(4.) That I have discovered from Cynthia Nunez, Robert Max, Benito Rodriguez, Shawn Baltazar, Baliff Swanson and Charles Russell, new evidence which supports Affiant's claim of constitutional violations, committed during his murder trial and presented herein;

(5.) That I intend to show, through testimony or by deposition, that Timiteo Sosa and Juvenile Gomez perjured themselves before Affiant's jury. And, that state witness Mark Baltazar also lied under pressure to do so by Assistant States Attorney Michael Madden; that Benito Rodriguez, Timiteo Sosa, Juvenile Gomez and Mark Baltazar were all coached in acting by prosecutor Madden and encouraged by Madden to include, whenever possible, prejudicial comments about gangs in their testimony;

(6.) That Affiant shall prove to the Court that ASA Madden committed subornation of perjury and conspired with witnesses to deprive Affiant of his constitutional rights and that he knowingly presented false evidence through the perjured testimony of state witnesses Mark Baltazar, Timiteo Sosa and Juvenile Gomez;

(7.) That I shall prove through my own testimony and that of Joseph Cody, Baliff Swanson, Judge Authen J. Cieslik's private security person (name unknown at this time) and Robert Max, that Judge Cieslik was biased

towards your affiant; had a presumtion of affiant's guilt before the trial had hardly begun, and that such prejudice was evident in the judge's rulings concerning the Admission of inflamatory and prejudicial evidence, the general conduct of the trial and the excessive sentence imposed on the affiant;

(8.) That during my trial and before the State had completed its presentation of their case, and before affiant's defense had been presented, judge Authur J. Cieslik, in private chambers, told Affiant, in front of other witnesses he "doesn't blame the (victim's) family for attacking him since he was responsible for their son's death". That one of the witnesses present – Baliff Swanson – not long ago, spoke to Affiant's brother – Robert Max – And informed Robert that Judge Cieslik had ~~in~~ it in for Affiant from the very begining;

(9.) That Affiant's father, Joseph Max, senior, had personal knowledge that Juvenile Gomez had given perjured testimony against his son (affiant Max) but that Max's trial Attorney did not call him to testify even in rebuttal, At Max's murder trial;

(10.) That Attorney Marc Beelin had informed affiant that Mark Baltazar had told him that he (Baltazar) had lied against the affiant in court;

(11.) That he has consistently tried to have his legal counsel/s present the issues, he now complains of, in court— any court! Yet they have continually filed briefs and arguments on issues "they" felt meritorious.

(12.) That your affiant knows of and intends to prove his innocence; he intends to demonstrate to the Court all prejudicial acts which contributed to a finding of guilt by his jurors. He intends to prove prosecutorial misconduct and the prejudgement of guilt by a biased trial judge. He intends to expose the actions of an over-zealous and deceitful prosecutor. He intends to prove the knowing use of perjured testimony by state witnesses. He intends to prove, as a result of a biased trial judge, numerous errors of the trial court concerning the allowance and the introduction of inflamatory and prejudicial evidence. He intends to prove that he was not a gang member and the group of young people affiant grew up with and paled around with (known then as Party Players) were not gang members and that the Party Players was not a gang.

(13) That affiant, if allowed the opportunity to do so, intends to prove his claims by subpoening the following persons to testify before the Federal District Court;

# PROSPECTIVE WITNESSES

CYNTHIA NUNEZ
4431 S. Homan
Chicago, IL. 60632

MR. GOMEZ (JUVENILE GOMEZ's Da[c]

ROBERT MAX

Charles Russell
Reg. No. A-10606
P.O. Box 1900, CANTON, IL. 61520

JOSEPH MAX, SENIOR
700 N. Broadway
McAllen, Texas. 78501

Baliff SWANSON

MARK BALTAZAR

MARC BERLIN

TIMITEO SOSA

MICHAEL MADDEN

JUVENILE GOMEZ

AUTHER J. CIESLIK

MARIBEL UAIASH                    SHAWN BALTAZAR


JOSEPH CODY                       LONNIE GONZALEZ

                                  BENITO RODRIQUEZ


Futhe Affiant sayeth naught.


Joseph MAX
Reg. No. N21823
P.O. Box 1900
Canton, IL. 61520


Subscribed And Swoan to before me
this __3rd__ day of __July__, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Ron A. Burkhart
Notary Public, State of Illinois
My Commission Exp. 08/22/2008

STATE OF ILLINOIS

COUNTY OF FULTON

SS

## AFFIDAVIT

I, Charles Russell, being first duly sworn upon oath deposes and states that the following affidavit is true and correct to the best of my knowledge and beliefs for all just and meritorious purposes. In support thereof I state as follows:

1.) That I am the Affiant herein and I am incarcerated at the Illinois River Correctional Center in Canton, Illinois, serving a sentence imposed by the Circuit Court of Cook County;

2.) That I have known Joseph Max for approximately 25 years. I met him while we were both serving sentence at the Stateville Correctional Center in Joliet, Il.

3.) That in late 1995 or early '96, I was serving sentence at the Sheridan Correctional Center. I was housed in Building 23 with approximately 99 other inmates, one of which was Shawn Baltazar, more commonly known to us as "Pirate".

Myself, Pirate and another inmate called "Ugly" spent a lot of our free time together. One day, in reminiscence, Pirate and I were talking about Stateville — shooting the breeze about the crazy things that went on there, the people we knew and various other things. I was telling a story about an event that involved myself and Joe Max. At the mention of Max's name, Pirate told me he knew him (Max) from the streets and that his brother, Mark Baltazar, had "been forced to testify against Max in order to avoid some rap the prosecutor was holding over his head".

I gave little thought to those words at the time, maybe no more than a nod in recognition of such occurances, that is until I once more ran into Max here at Illinois River C.C.

I was in the institutional library, searching for some reading materials, Max was doing some legal research. We spoke for a while and the conversation turned on the merits of a habeas petition he had filed in the Federal District Court. While discussing the issues he mentioned Mark Baltazar's name. I asked if he was Pirate's brother. When Max informed me that Mark was indeed Pirate's brother, I asked how he knew them and then related to Max what Pirate had told me. Max asked if

I would sign an Affidavit stating what Pieate had told me. My answer is yes.


Futher affiaut sayeth naught.



_Charles Russell_
Charles Russell, Affiaut
Reg. No. A10606
P.O. Box 1900
Canton, IL. 61520



Subscribed and Sworn to before me this 10th day of June , 2008.

_Don A. Burkhart_
Notary Public

"OFFICIAL SEAL"
Don A. Burkhart
Notary Public, State of Illinois
My Commission Exp. 08/22/2008

STATE OF ILLINOIS

COUNTY OF  Cook                          ss

### AffidAviT

I, CynthiA Nunez, being first duly sworn upon oath deposes And states that the following Affidavit is true And correct to the best of my Knowledge And beliefs for All just And meritorious purposes. In support thereof I state As follows:

1.) That I Am the Affiant herein;

2.) That sometime in 2007, while At AN Entertainment Club, I had the chance opportunity to run into AN old friend named Benito Rodriguez. Benito had been A witness for the state during the trial of Joseph MAX;

3.) That Benito informed me that Joseph MAX did not get A fair trial in that the prosecutor, A mAN nAmed Michael MAdden, coached him And the other witnesses on what to say during the trial, how to Act emotional in front of the jury And to speak about gAngs As often As possible. An example Benito gave was ~~the~~ when referring to the "PArty PlAyers", say "the gAng PArty PlAyers" or the "PArty PlAyers GAng.".

4.) That I believed the information important
    And relayed the contents of my conversation,
with Benito, to Joseph Max.


Futher affiant sayeth Naught.


Cynthia Nunez, Affiant
4431 S. Homan Ave
Chicago, IL. 60632



Subscribed And Sworn to before me
this 11 day of _____June_____, 2008

Victoria Lopez
Notary Public


"OFFICIAL SEAL"
Victoria Lopez
Notary Public, State of Illinois
Commission Expires 8/23/2011

STATE OF ILLINOIS
COUNTY OF Hildalgo          SS

## AFFIDAVIT

I, Joseph MAX, senior, being first duly sworn upon oath deposes and states that the following affidavit is true and correct to the best of my knowledge and beliefs for all just and meritorious purposes. In support thereof I state as follows:

1.) That I am the father of Joseph MAX and the Affiant herein;

2.) That after Joseph's arrest for the charges of unlawful restraint and robbery allegedly committed against Juvenile Gomez, I went to the home of Mr. Gomez — Juvenile's father — to speak with him and learn, if I could, why his son had lied to the police and had my son arrested;

3.) That Mr. Gomez did not dispute the accusation I had made, when calling his son, Juvenile a liar, but instead told me that if my son, Joseph, had paid half the damages to the car, that he

just recently bought for JUVENILE, NONE of this would ever have happened;

4.) That I informed my son And his Attorneys, one I remember was Joseph Cody, of the results of my conversation with Mr. Gomez.

5.) That I was ready, willing And desiring of the opportunity to testify As A witness for the defense but was never given the opportunity to do so. even though I was in the Courtroom Almost every day during my son's trial.

Further Affiant sayeth naught.

Joseph MAX SR
Joseph MAX, senior, Affiant
700 N. Broadway
McAllen, TX  78501

Subscribed And Sworn to before me
this 14th day of _____ June _____, 2008
NOTARY Public

RAQUEL REYNOSO
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
3-23-2010

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

United States of America ex rel.                          )
                                                          )
Joseph Max #N-21823                                       )
(Full name and prison number)                             )
(Include name under which convicted)                      )
                                                          )
PETITIONER                                                )          CASE NO: 08 C0616
                                                          )                    (Supplied by Clerk of this Court)
      vs.                                                 )
                                                          )
Warden, Kevin Gilson                                      )
(Warden, Superintendent, or authorized                    )
person having custody of petitioner)                      )
                                                          )
RESPONDENT, and                                           )
                                                          )
(Fill in the following blank only if judgment             )
attacked imposes a sentence to commence                   )
in the future)                                            )
                                                          )
ATTORNEY GENERAL OF THE STATE OF                          )          Case Number of State Court Conviction:
                                                          )
LISA Madigan                                              )          81 C 2158
(State where judgment entered)                            )

### PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of Cook
   County, Illinois. 2650 South California Ave. Chicago, IL. 60608

2. Date of judgment of conviction: February 4, 1982

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   Murder - indictment number 81 C 2158

4. Sentence(s) imposed: Seventy years

5. What was your plea?  (Check one)        (A) Not guilty        ( ✓ )
                                           (B) Guilty            (   )
                                           (C) Nolo contendere   (   )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

_____

## PART I -- TRIAL AND DIRECT REVIEW

1. .Kind of trial:  (Check one):        Jury ( ✓ )        Judge only ( )

2. Did you testify at trial?    YES ( ✓ )        NO        ( )

3. Did you appeal from the conviction or the sentence imposed?  YES ( )   NO ( )

   (A) If you appealed, give the

      (1) Name of court:  Appellate Court of Illinois

      (2) Result:  Denied

      (3) Date of ruling:  March 9, 1984

      (4) Issues raised:  Ineffective assistance of Counsel, Improperly Sentenced to extended-term, cross-examination of Co-defendant pending cases and plea-agreement. Voir dire.

   (B) If you did not appeal, explain briefly why not:

      _____

4. Did you appeal, or seek leave to appeal, to the highest state court?  YES ( ✓ )    NO ( )

   (A) If yes, give the

      (1) Result  Denied

      (2) Date of ruling:  July 5, 1984  (no: 60003)

      (3) Issues raised:  Ineffective assistance of Counsel Voir dire, Improperly Sentenced, Co-defendant's pending cases and plea agreement.

   (B) If no, why not: _____

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( ✓ )  No ( )

   If yes, give (A) date of petition: March 1987  (B) date *certiorari* was denied:  June 8, 1987

2

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( ✓ )  NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A.  Name of court:  Circuit Court

   B.  Date of filing:  October 4, 2000

   C.  Issues raised:  Vacate extended portion of Sentence, (Apprendi-Vs. New Jersey) Ineffective assistance of Counsel,

   D.  Did you receive an evidentiary hearing on your petition?    YES ( ✓ )  NO ( )

   E.  What was the court's ruling?  Further guidence from Supreme Court needed.

   F.  Date of court's ruling:  January 18, 2001

   G.  Did you appeal from the ruling on your petition?    YES ( ✓ )  NO ( )

   H.  (a) If yes,  (1) what was the result?  Denied

                   (2) date of decision:  April 24, 2002

       (b) If no, explain briefly why not: _____

   I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

       YES ( ✓ )  NO ( )

       (a) If yes,  (1) what was the result?  Denied

                   (2) date of decision:  October 7, 2003  (no: 93973)

       (b) If no, explain briefly why not: _____

3

2. With respect to this conviction or sentence, have you filed a petition in a state court using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )        NO (✓)

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

      1. Nature of proceeding    _____

      2. Date petition filed    _____

      3. Ruling on the petition    _____

      3. Date of ruling    _____

      4. If you appealed, what was
         the ruling on appeal?    _____

      5. Date of ruling on appeal    _____

      6. If there was a further appeal,
         what was the ruling ?    _____

      7. Date of ruling on appeal    _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?
         YES (✓)  NO ( )

   A. If yes, give name of court, case title and case number: District Court Northern District of Illinois, Eastern Division — (84 C 8425)

   B. Did the court rule on your petition? If so, state

      (1) Ruling: Denied- Motion for Reconsideration

      (2) Date: November 6, 1984

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

YES ( )  NO (✓)

If yes, explain: _____

_____

4

PART III – PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one   Ineffective assistance of Counsel
    Supporting facts (tell your story briefly without citing cases or law):

So weak was the evidence against petitioner apart from Co-defendant Gonzales' testimony, and so weak would that testimony have been if effective cross-examination had been feasible. Defense counsel's performance at petitioners Murder trial was constitutionally ineffective, Counsel failed to object on repeated gang accusations against Petitioner in court. Counsel also failed in impeaching states
                                    * (see additional pages on back)

(B) Ground two   Extended Sentence
    Supporting facts:

"Illinois Constitution," that, "all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." The judge in Petitioner's case never considered his age (19) and productiveness when sentencing petitioner to an extended-term of Seventy (70) year. The court failed to balance or Temper its
                                    * (see additional pages on back)

5

(C) Ground three   Prosecutor Misconduct
Supporting facts:

Prosecutors, as much as any other officer in the judicial process, has an obligation to safeguard the right to trial by an impartial jury. Prosecutor's improper remarks such as "Gangbanging Punk", and "Gangleader" at defendants trial were deliberately placed before the jury in a manner calculated to evoke personal prejudice against the defendant. *(see pages on back)

(D) Ground four   Voir dire, Gangs and Gang affiliation.
Supporting facts:

Jurors should be provided by the court the standards of instruction on the testimony of an accomplice. When the only chief witness says that he was involved in the commission of a crime with the defendant. The testimony of that state witness is subject to suspicion and should be considered by the jurors with caution. I should be carefully examined in light *( see additional pages on back)

2   Have all grounds raised in this petition been presented to the highest court having jurisdiction?
     YES (✓)   NO ( )

3.   If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:

_____

_____

(E) Ground Five   Cross-Examination and plea agreement - Co-defendant
Supporting Facts:

Counsel failed to expose and inquire complete arrangement into the plea-agreement and exact sentence that Co-defendant would serve.

* (See additional pages on back)

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _Pro-Se_

(B) At arraignment and plea _Pro-Se_

(C) At trial _Micheal Cody_

(D) At sentencing _Micheal Cody_

(E) On appeal _State Appeallant Defender_

(F) In any post-conviction proceeding _Appeallant Defender and Karl Minkus._

(G) Other (state): _Samuel F. Adam and Pro-Se_

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (✓)   NO ( )

Name and location of the court which imposed the sentence: _Circuit Court of County of Cook._

Date and length of sentence to be served in the future _June 12, 1982 (14 year, extended-term._

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _December 28, 2007_          _Pro-Se_
          (Date)                                      Signature of attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

_Mr. Joseph Mof_
(Signature of petitioner)
_N-21823_
(I.D. Number)
_R.R.#4 Box 196, Mt. Sterling, Il._
(Address)                          _62353_

REVISED 01/01/2001

7

only central witness who was originally charged with the murder of the victim. Counsel failed to provide an effective overall defense strategy and failed to impeach key state witness based upon "undisclosed plea-agreement and short sentence for his testimony against petitioner." Counsel failed to challenge the state's boistering of testimony of Co-defendant Gonzales and failed to object on numerous accurances to prosecutorial misconduct about gang activity throughout the entire trial.

In essence, the case came down to a credibility battle between Gonzales and Petitioner, requiring the state to convince the jury beyond a reasonable doubt that Gonzales was the one telling the truth. The other state witness was a person (Baltazar) who was not present at the shooting but who testified that petitioner had told him that he (petitioner) had shot at a group of individuals who called themselves "The NightCrew". However this testimony like Gonzales' testimony, was highly impeachable by any competent lawyer. Nevertheless, petitioner's counsel did virtually nothing to prepare an effective cross-examination about any pending cases and to test their credibility. Significant grounds for such impeachment and reason to testify falsely existed, both as to the consideration they receive in exchange for their testimony and pending cases in court. Gonzales had two(2) pending cases in court. (a) U.U.W. when he (Gonzales) was arrested for possessing an automatic sawed-off 12-gauge shot gun. (B) statuator rape for having sex with an underage minor of the age of 14 or 15 years of age. Gonzales who was originally charged with the murder, had reason to testify falsely against Petitioner, when Gonzales and prosecutor (M. Madden)

made a plea-agreement to run _all_ of Gonzales cases
together and receive a total sentence of Five(5) years to
serve only two-and-a-half (2½) in prison, with the time
served in the county jail to be included. This information
concerning the actual time to be served in prison, as well as
Gonzales two(2) other pending cases and plea-agreements was
_not_ allowed to be revealed to the jury. Defense Counsel attempted
to reveal this information in court, but was denied by the
judge. Defense Counsel also failed to submit additional questions
or otherwise ask that the court question prospective jurors further
regarding their potential bias towards gangs (TR. 70-71, 75) And
while Illinois courts have ruled that trial Counsels' failure to
question prospective jurors regarding gang bias may be trial
strategy in cases where both the defendant and the victim were
gang members. In Petitioner's case, the victim was _not_ a gang
member, but was potrayed as an innocent bystander. (TR. 66)
Therefore, if given the opportunity to present his claim at an
evidentiary hearing, Petitioner will be able to demostrate that
his Counsel was inffective because his Counsel's Failure to
question jurors regarding gang bias was outside the range of
professionally Competent assistance and _Could not_ be considered
trial strategy.

( 2 )

Vengeance with any consideration of rehabilitation as is mandated.

Petitioner contends that the sentencing judge was barred from making an independent and personal assessment of petitioner's life while growing up. Petitioner had never been to prison, and had one prior conviction, which he pled guilty for probation. And any sentence that increases the penalty beyond the statutory maximum otherwise prescribed for the offense must be proven to a jury beyond a reasonable doubt rather than by the sentencing judge. A defendant has a Sixth Amendment right to have a jury determine based on proof beyond a reasonable doubt any fact that has the effect of increasing a mandatory sentencing range. When petitioner was charged with Murder along with a Co-defendant in 1981. The statutory Maximum Sentence range was twenty (20) to forty (40) years. In this case, Petitioner was given a sentence of Seventy (70) years, a thirty (30) year enhanced Sentence, which Violated his Sixth Amendment right. Petitioner's sentence falls Far from both the minimum and maximum sentence's of twenty (20) to forty (40) years for the crime alleged in the indictment. It doubles the punishment for which the Petitioner was indicted and autorized by the initial Sentencing guideline range in a case where the petitioner would otherwise have received. The Circuit Court Should have instructed the jury in petitioner's murder trial as to definition of Wanton Cruelty where Court had instructed jury that, if it Found that

Petitioner committed first-degree murder, it had to determine whether murder was accompanied by "exceptionally brutal or heineous behavior indicative of wanton cruelty," and then instruct the jury as to definition of both "brutal and heineous." In defendant's trial, the court disregarded these instructions to the jury, in which the victim who died was shot once, and died a few hours later at the hospital. A jury must take into account all the circumstances surrounding an offense in assessing whether the brutality and heineousness of the crime qualify as exceptional to warrant an extended-term sentence. The Framers would not have thought it too much to demand that, before depriving a man of more years of his liberty, the state should suffer the modest incovenience of submitting its accusation to the unanimous suffrage of twelve of his equals, and neighbors, rather than an employee of the state. The historical foundation for our recognition of these principles extends down centuries into the common law. To guard against a spirit of oppression and teyranny on the part of rules. And as the great bulwark of [our] civil and political liberties, trial by jury has been understood to require that the truth of every accusation, whether preferred in shape of indictment, information or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendants] equals and neighbors.

The prosecutor's comments clearly were improper and he should have been rebuked by the trial judge. When Prosecutor's make deliberate gang comments, they have the tendency to mislead the jury and to prejudice the accused. Whether remarks were isolated or extensive, strength of commpetent proof introduced to establish guilt of the accused, and whether comments were deliberately placed before jury to divert attention to extraneous matters. Defendants <u>due</u> <u>Process</u> was denied by prosecutors deliberate remarks which Sufficiently infected the entire trial, so as to make it fundamentally unfair. Prosecutors may not make material misstatements of fact in summation. And while prosecutors May argue their case with vigor, they may not make "intentional comments and misrepresentations to jury." They have special duty of integrity to uphold when arguing their cases in court. Without question, the most common form of misconduct taking place during a criminal trial involves over-zealous tactics used by the prosecutor. Improper statements are geared to appeal to jurys emotion or otherwise prejudice the defendant in its eyes. Another common practice of some prosecutors is to express "personal opinion" as to the guilt of the person of trial. This is not only highly objectionable, but extremely prejudicial. During Petitioners trial, the Prosecutor (Madden) repeatedly Called the defendant a "Gangbanging Punk, gang member and gangleader," The Prosecutor spoke of gang activity throughout the entire trial, disregarding even witnesses statements

that the Party Players were a group of teenagers of both boys and girls ranging from the ages of 15 to 19 years of age, who enjoyed going to dances and parties. Nevertheless the prosecutors poisoned the trial from opening statements to closing arguments. During defendants' trial, defense counsel never objected to the improper remarks in court, as defendant repeatedly asked his attorney to do so. Furthermore, Prosecutorial Misconduct infected the factfinding and sentencing process, which resulted in defendant receiving an extended-sentence. During the opening statements, closing arguments and throughout the entire trial, the prosecutor (Madden) constantly discussed gangs and gang activity to inflame the jury. Over the objection on one or two **occasions** of defense counsel. Yet, the court allowed the prosecutor to continue his assult against the defendant about his affiliation with gangs. The court allowed additional prosecutors take the stand to testify in front of the jury about gangs. One prosecutor being assigned to "gang prosecutions," (Gregg Owen). but has since gone into private practice. The trial prosecutor (M. Madden) was "disbarred" from practicing law in Illinois and had his name and license stricken from the roll of Attorneys of Illinois after being indicted on criminal charges in 1989 for making false statements to two(2) clients concerning money that he (Madden) attempted to obtain from false services, which both clients had <u>no</u> obligations to pay. (See Exhibit—A). Micheal Madden committed Criminal Acts which costed him his license to practice law any longer in Illinois.

(2).

This attorney who committed a criminal offense as
an attorney of the state, one who agreed to honor and
obey the law, was the same person who committed prosecutor
misconduct by making improper remarks against petitioner
with the sole purpose to create prejudice in the minds of
the jurors. The trial court that allowed this prosecutor to
continue his assult and lies against petitioner erred in
permitting it to be made. The prosecutor's improper remarks
throughout the entire trial about gangs unduly prejudiced the
petitioner's opportunity to receive a fair trial. Prosecutor's
comments on gangs, gang activity and gang affiliation were
not limited to one phase of the trial, the entire trial was
poisoned by the word "Gangs." Prosecutor Madden also
sought to elicit improper and false testimony regarding
gangs and gang activity from witnesses who had made
plea-agreements with prosecutor Madden, in regards to
pending cases. This information was not allowed to be
discussed in court, over objection from defense attorney.
The improper remarks and comments made by these
witnesses about gang affiliation, substantially impaired the
petitioner's right to a fair trial. Throughout the petitioners
trial, prosecutor misstated facts about gangs and gang
activity, put words in witnesses mouth, made untrue
insinuations about petitioner, all calculated to
mislead the jury. Prosecutor Madden put one
individual named "Sosa" on the stand and advised
this person to explain to the jury about a robbery

(4)

that occured at the restaurant which he worked, and state to the jury that petitioner committed the crime. Which petitioner **was never** questioned, arrested nor charged for any such crime. This witness was brought into Court by Prosecutor Madden, and instructed to lie and make false testimony to the jury. Prosecutor continually referred to petitioner as a "Gangbanger, Gangleader and Gangbanging Punk", in an obvious attempt to create class prejudice in jurors. Petitioner contends the jury should have been instructed on Voir dire concerning gangs and gang bias since it is well known fact, the subject on gangs and gang membership is an area of potential bias.

I petitioner would also like to provide (Exhibit-B) concerning trial judges (Arthur J. Cieslik) Complaint against him for "rude and sexist remarks to women" And his reprimand for the offense. Judge Cieslik and Prosecutor Madden failed to provide petitioner a fair trial which is petitioners right to receive. Together they poisoned the trial, proceedings and jury with the admission of false and misleading testimony and evidence.

of the other evidence in the case as well as plea-agreements made by states only Chief witness concerning any and all pending cases. It is within the sound discretion of the trial court to give proper instructions on the elements of the offense and case in order to insure a fair determination of the case.

At petitioners trial, the prosecutor effected the "entire trial", with prejudicial evidence of gangs and gang affiliation. This tactic was to inflame the jury with hatrate towards the defendant and gangmembers. The prosecutors EXTENSIVE improper remarks was purposely displayed for the jury in order to direct the jury's attention away from the true issues and evidence in the case.

The essential demands of Fairness embedded in the Sixth Amendments right to an impartial jury guarantees an adequate VOIR DIRE designed to "identify Unqualified Jurors" and ensure the selection of an impartial jury". The full purpose of voirdire examination is to select an impartial jury through intelligent use of challenges. Wherefore, charge of actual bias on part of trial judge can be reviewed after Conviction. Petitioners trial judge abused his discretion when he limited voirdire examination of jurors concerning any potential bias or prejudice regarding gangs and gang affiliation. When testimony regarding gang membership and gang related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted of the trial Court, concerning gang bias. Petitioner's Eight and Fourteenth Amendment right to exercise

(60)

Voir dire challenge knowingly was infringed when the State trial court refused to allow him to ask questions or questions that should have been asked and directed towards determing whether jurors harbored misconceptions about gangs and gang activities that might bias Petitioner in favor of a guilty Verdict and has a right to be retired and have his extended sentence vacated. Petitioner argues that limiting Voir dire creates unreasonable risk of bias or prejudice infecting trial process; and Violates his due process. Petitioner also contends that the Voir dire he requested was necessary to dispel the common misconception of gang bias. The right to an impartial jury is basic to our system of justice. This right carries with it the concomitant right to take reasonable steps designed to ensure that a jury is impartial. Perhaps the most important device to serve this end is the jury challenge, a device based on Voir dire examination. Although the proper scope of Voir dire is generally left to the sound discretion of the trial court, that discretion is not unfettered. Limits on Voir dire that creates an unreasonable risk of bias or prejudice infecting the trial process Violate due process. In petitioners case, he has been deprived of a fair trial and stripped of his right to due process. The district court is obligated to conduct individual Voir dire to assure impartiality. This was poorly disregarded and limited at petitioners trial.

      In petitioners case, both the Voir dire and trial judge's instructions were inadequate to dispel

biasing misconceptions about gangs and gang affiliation.
He did not have the benefit of such clarification. If
jurors began with an unfounded fear of gang violence and
ended with that same fear. Voir dire was essential in this
case, and make it all the more important. The trial Court
erroneoresly refused and limited Voir dire on gang bias.
"Allowing Voir dire admittedly plays a critical function in
assuring that petitioner's Sixth Amendment right to an impartial
jury will be honored." The essential demand of fairness
embedded in the Sixth Amendment's right to an impartial jury
guarantees an adequate Voirdire designed to identify unqualified
jurors and ensure the selection of an impartial jury." In
Chicago, as in every other large metropolitan area, there is
a deep, bitter and widespread prejudice against street gangs."
Therefore, capable Chicago trial lawyers ought know conducting
Voir dire in gang cases presents particular challenges since
gang membership and gang activity is an area of potential bias.
Jury selection is within the gambit of requirements for
effective assistance of counsel. Most potential Illinois jurors
and their families may have had no direct or indirect involvement
with street gangs, but many of them would probably hold opinions
on the subject. Herein the instant case no questions were
asked during Voir dire about bias towards gangs and personal
feelings about gang activity, and thus no means to elicit jurors
perception and predisposition towards gangs. Without questions
by the court or attorney, there was no sufficient way to
create a reasonable guarantee that any bias towards
Petitioner would be discovered. Limiting Voir dire made

it almost impossible for petitioner to receive a fair trial.

In this case the persona of the street gang ran like a thread through the fabric of the trial with discussions of gang territory, gang wars, and gang affiliation. Since there is a strong prejudice in our society against membership in gangs, and the prosecution successfully emphasized the role of gangs as "Central to it's case," revealing gang bias of prospective jurors during voir dire was essential in this case. On appeal an issue was raised as whether because repeated insinuations, questions, and arguments regarding Petitioner's gang affiliation were of no probative value and were introduced to inflame the jury... a new trial was Mandated. Pretrial the defense sought a ruling on its motion in limine to preclude any evidence concerning petitioner's affiliation with gangs. This motion concluded that any gang testimony that would be introduced or solicited by the state would be in fact "a red herring dragged across the path of truth to lead the trier of fact into collateral issues." (R.p. 857) Co-defendant (Gonzales) turned chief witness testied, over objection that he thought the people on the street were "Saints," a street gang (R.p. 347) Gonzales also admitted to once being a member of the Latin Kings street gang (R.p.370) State witness Kalinsky testified to a fight between the Party Players and the Spanish Gangsters... (R.p. 409) There were references to "Disciples" and the prosecution "implied that petitioner's dance group that consisted of teenagers both girls and boys with ages ranging from 15 to 19 years of age, was itself a gang. Even when testimony in court

(5)

proved that it was simply a dance group of teenagers. Upon
Cross-examination of defense witness Parker the prosecutor
quizzed this witness about his knowledge of various street
gangs. (R.p. 673-74) The state called a rebuttal witness
(Gomez) who testified that petitioner had told him he would
have to join his gang. (R.p. 701) The prosecutor called petitioner
" a gangbanging punk" in arguments to the jury. (R.p. 772-773)

In the trial of petitioner the prosecution (Madden)
was allowed to repeatedly bring out evidence that petitioner
was the Head of a gang called the Party Players, despite the
fact such evidence was totally irrelevent and false. Witness
after witness was asked about petitioner's affiliation with
the party players and about "the purpose and nature" of
the group. (R.p. 275, 324 -326, 347, 370, 409, 429, 475, 542,
647, 648, 653, 673-74, 701) During the prosecution's opening
statements, closing arguments and entire trial, prosecutor
claimed petitioner was the founder, president of the Party
Player street gang, (R.p. 227) and that petitioner had a
motive to shoot a rival street gang leader (R.p. 229) When
in fact prosecutor knew that shooting victim who died at
the hospital several hours later of a single gun shot, was
in no gang whatsoever, but simply an innocent bystander.
References to gang affiliation were also part of the
testimony of B. Rodriguez and M. Beltazar (R.p. 429, 478-79)
Petitioner did not receive a fair and impartial trial because
of his trial attorney's failure to adequately Voir dire

(1)

prospective jurors regarding their bias and prejudices about street gangs. American Bar Association standards as well as the Courts made it clear that a lawyer should prepare himself prior to trial to discharge effectively his function in the selection of the jury before 1977, where both dates predate the petitioner's trial. Throughout Petitioners trial, the vital issue was about gangs. From opening statements and closing arguments, Prosecutor (Madden) reminded the juror's of the importance of gang testimony at trial. The jury heard testimony from numerous police officers assigned to gang units, police dectectives, and gang members. Given this list of witness, the importance of gang testimony at trial and the prejudice which was attached to such testimony, the trial Court should have questioned the prospective jurors to determine whether they harbored any gang bias or prejudice. Petitioner cannot be held accountable for Constitutionally deficient trial or appellate Counsel. Petitioner is entitled to adequate representation, in court proceedings. Counsel failed on this issue at trial. And attorney Samuel F. Adam, filed a Post-Conviction petition on May 28, 2002 asserting only an "Appredi" Sentencing claim. Petitioner has Never had one complete opportunity to show a substantial denial of his Constitutional rights. A fair and impartial trial has been denied where trial Counsel (and Court) failed to request prosepective jurors be questioned about their bias and prejudices against gangs and gang membership in Violation of The Illinois of U.S. Constitution. Therefore, cause is shown and prejudice is established in petitioners claim for relief.

Counsel failed to expose and present to the jury the true
extent of the five(5) year sentence afforded to Gonzales
when he agreed to turn state witness and testify against
petitioner. There evidently was an additional and quite
significant plea-agreement for Gonzales' testimony against
Petitioner was not recited and disclosed to the jury. In
1981 Gonzales had been charged and arrested for possession
of a Sawed-off 12-gauge automatic Shotgun and also
arrested for having sex with a 15-year old minor. In exchange
for Gonzales testimony against petititioner, He would agree
to a deal by the state of five (5) years, with time served in
the county jail, making him eligible for release in a few
months.

The court prevented the defense from mentioning in
Full form about any pending cases and plea-agreements made
between Gonzales and the state in front of the jury. Counsel
abandoned an important avenue of impeachment as to the
states star witness, which would indicate that the witness
is lying — and such impeachment "increases in sensitivity in
direct proportion to the witness's importance to the states
Case" Baltazar was the states other witness, he testified
petitioner had told him about shooting at some people
Called "Night Crew." It is believed that Baltazar also had
pending burglary case(s), which provided the opportunity
for Baltazar to accept a deal from the state for his
testimony against petitioner. It is also believed that
Baltazar's brother S. Baltazar might have been assisted
on a pending case that he had if his brother M. Baltazar

agreed to testify against Petitioner. This information
was never provided to the jury which would have destroyed
the States effort to bolster Baltazar as a witness.
Mr. Baltazar had also "Admitted to testifying falsely to
Petitioners attorney Mark Berlin over the phone, but
later decided not to come forward with the truth"
(attorney can varify this statement) IF jury had the
opportunity to hear this information at trial, The jury
would have been understandably suspicious of this Criminal
informants purpose of becoming a state witness. It is well-
known fact that "Criminals who are rewarded by the
government [ by being granted leniency or immunity ] for their
testimony are inherently untrustworthy." The government
must disclose any understanding or agreement it has with
its witness. A conviction based on testimony implicating
" Concealed incentives" to an important witness is potentially
tainted, Defense counsel unreasonably failed to challenge
these Vulnerable witnesses, bolstered and vouched for
by the prosecuter. Prosecutor consistantly spoke about
gangs and petitioners gang affiliation to influence the
jury's assessment of the evidence. Petitioners case was
weak and the Co-defendant who was originally charged
with the murder, became the central source of the
prosecutions case and totally dependent on Gonzales
as credible for the state. The prosecutor is an officer
of the court whose duty is to present a forceful and
truthful case to the jury, not to win at any cost

(3)

which includes promising leniency or plea-agreements in exchange for testimony by known criminals with pending cases such as Gonzales. Jurors were <u>not</u> offered the opportunity to hear cross-examination by defense counsel about plea-agreements made to Gonzales by the prosecutor concerning the arrangements that were agreed upon with his pending cases in return for his testimony against Petitioner. Judge denied defense counsel the right to question Gonzales about the existence of his plea-agreement concerning his two(2) pending cases of Unlawful use of a weapon, being a Sawed-off 12-gauge automatic shotgun, — and the second pending case was the charge of having sex with an underage minor of the age of 14 or 15 year of age. This cross-examination would have provided the opportunity to show the jury that witness had motive to lie and give false testimony in court against Petitioner, the court and prosecutor had breached both (A) its duty to disclosed exculpatory evidence. (B) its duty to elicit testimony it knows to be false. The prosecutions misconduct so prejudiced his conviction as to undermine confidence in the jury's verdict. Gonzales was the "Central and Crucial Chief witness against petitioner. And jury had the duty as well as right to know the arrangements with regard to a cooperation agreement that existed between the witness(s) and the prosecution. It is not disputed that petitioner's conviction depended significantly on Gonzales testimony. Gonzales was the Central and Key witness against petitioner. And was originally charged with the murder of the victim before plea-agreement was made on the murder charge and two(2) pending cases that Gonzales was out on bond and Fighting in Court. If defense Counsel

had the chance to cross-examine Gonzales on his plea-
agreements with prosecutors. Defense Counsel could have shown
cause to lie and give false testimony against petitioner, and
show that his credibility was unreliable and untruthful. It is
Known Fact that "the jury's estimate of the truthfulness and
reliability of a given witness may well be determinative of
guilt or innocence, and it is upon such subtle factors as
the possible interest of the witness in testifying falsely that
a defendants life or liberty may **depend**." And in petitioners
Case, Gonzales' possible interest in testifying falsely was anything
but subtle. Jurors lack of Knowledge of agreement has
prevented full appreciation of relationship between goverment
and co-defendant who turned state witness against Petitioner.
The jury was unable to properly evaluate Gonzales testimony
to its fullest potential since the full content of Gonzales'
plea-agreement and actual sentence was not allowed and
was hidden from the jury and not allowed to be explained
and heard. Petitioner's rights to due process under the
Fourteenth Amendment was violated by the government,
And limitation of Cross-examination of Co-conspirator
Violated defendant's sixth Amendment right to Confront
adverse witness. Where a plea-agreement allows for
Some benefit or detriment to flow to a witness as
a result of his testimony, the petitioner must be permitted
to cross-examine the witness sufficiently to make
clear to the jury what benefit or detriment will
flow, and what will trigger the benefit or detriment,
to show why the witness might testify falsely in order

(GROUND FIVE) — Cross-examination / plea agreement.

to gain the benefit or avoid the detriment. The Constitutional
right to cross-examine is subject always to the broad discretion
of the trial judge to preclude repetitive and unduly
harassing interrogation," but that limitation cannot preclude
a defendant from asking, not only "whether [the witness]
was biased" but also "to make a record from which to argue
why [the witness] might have been biased,"[E]exposure of a
witness'motivation in testifying is a proper and important
Function of the constitutionally protected right of Cross-examination.
In petitioners case, the jury never got the opportunity to hear
the full-term of agreement made between Co-defendant turned
Key witness for the goverment.

        Defense Counsel if given the opportunity could have
made clear to the jurors on why the Co-defendant turned
witness had reason to testify falsely and could have provided
information about his (Gonzales) two(2) Pending felony cases.
Petitioner suffered a violation of his constitutional right of
Confrontation. In Petitioners Case, The Co-defendant who was
to pled guilty in a plea-agreement on the pending murder
Charge and two pending case's for a total Sentence of five(5) years
to do two and one half years (2 1/2) total years, became the States
chief witness against petitioner in order to have his sentence
reduced. Defense Counsel had the right to Cross-examine the
Co-defendant rigoresly in order to disclose to the jury the
purpose of his plea-agreement and credibility. To deny cross-
examination of governments Chief witness who was
originally charged with the murder, Violates petitimers
Constitutional right to confrontation of a Key witness
who was originally charged with Murder.

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, Mr. Joseph Max _____, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this 4th day of January, 2008.

Mr. Joseph Max - N21823

Affiant

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Mr. Joseph Max                          )
Plaintiff,                              )
                                        )  Case No. 81 C 2158
        v.                              )
                                        )
Warden, Kevin Gilson                    )
Defendant                               )

PROOF/CERTIFICATE OF SERVICE

TO: Clerk                           TO:

    U.S. District Court             Richard A. Divine
    219 South Dearborn street       Cook County States Attorney
    Chiga, Illinois. 60604          300 Daley Center
                                    Chigo, IL. 60602

PLEASE TAKE NOTICE that on January 4, _____, 20 08, I have placed the
documents listed below in the institutional mail at Western IL. Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: Habeas Corpus Motions
1-Original and 2-Copies


Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: January 4, 2008

                        /s/ Mr. Joseph Max
                        NAME: Mr. Joseph Max
                        IDOC#: N-21823
                        Western IL. Correctional Center
                        P.O. BOX 196
                        Mt. Sterling, IL 62353

Revised Jan 2002

**87 CC-2 Filed 1/21/87**

### Arthur J. Cieslik, Circuit Judge, Cook County Circuit

The Complaint alleged intemperate, rude and sexist remarks to women attorneys during official proceedings

Order of 7/30/87: Stipulation of the parties on the facts accepted and Respondent reprimanded.



IN THE SUPREME COURT OF ILLINOIS

In the Matter of:                )    Supreme Court Rule M.R.
                                 )
    MICHAEL JOHN MADDEN,         )    Administrator's No.
                                 )
    Attorney-Movant,             )       89 CH  **636**
                                 )
    No. 1726528.                 )

## MOTION

The undersigned, Michael J. Madden, respectfully represents to the Court:

1. That on May 9, 1977, Movant was licensed by this Court to practice law in the State of Illinois.

2. That Movant desires to have his name stricken from the Roll of Attorneys licensed to practice law in Illinois pursuant to Supreme Court Rule 762.

WHEREFORE, the undersigned moves this Court that his name be stricken from the Roll of Attorneys licensed to practice law in Illinois.

_Michael J. Madden_
Michael J. Madden

DATE: _Sept 12, 1989_

```
" OFFICIAL  SEAL "
BARBARA J. BRESINGHAM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/30/92
```

# FILED

### OCT 17 1989

ATTY REG & DISC COMM
CHICAGO

( Exhibit - A )

IN THE SUPREME COURT OF ILLINOIS

In the Matter of:                    )
                                     )     Supreme Court Rule M.R.
    MICHAEL JOHN MADDEN,             )
                                     )     Adminsitrator's No.
    Attorney—Movant,                 )
                                     )        89 CH **636**
    No. 1726528.                     )

## AFFIDAVIT

Michael J. Madden, being first duly sworn, on oath states:

1. That he has filed a Motion to strike his name from the Roll of Attorneys admitted to practice law in this State.

2. That he has received from the Administrator of the Attorney Registration and Disciplinary Commission a copy of the Statement of Charges pending against him, a copy of said Statement being attached hereto.

3. That the Affiant's Motion to strike his name from the Roll of Attorneys admitted to practice law in Illinois is freely and voluntarily made.

4. That the Affiant understands the nature and consequesces of said Motion.


FURTHER AFFIANT SAYETH NOT.

_____
                Michael J. Madden


Subscribed and sworn to before me
this /2th day of September 1989.

_____
        NOTARY PUBLIC

" OFFICIAL   SEAL "
BARBARA J. BRESINGHAM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/30/92

IN THE SUPREME COURT OF ILLINOIS

In the Matter of:                    )
                                     )
    MICHAEL JOHN MADDEN,             )    Supreme Court No. M.R.
                                     )    Administrator's No.    89 CH **636**
    Attorney-Movant,                 )
                                     )
        No. 1726528.                 )

### STATEMENT OF CHARGES

John C. O'Malley, Administrator of the Attorney Registration and Disciplinary Commission, by his attorney Thomas P. Sukowicz, states that on the date Michael John Madden signed a motion to have his name stricken from the Roll of Attorneys admitted to practice law in this State, the following matters were pending against him:

#### Investigation No. 88 CI 3630

Movant was charged with making false statements to two clients who were represented by Movant under a group legal service plan and under no obligation to pay any fee to Movant and inducing them to pay him $2,400 and $4,000, respectively, as additional legal fees.

Respectfully submitted,

John C. O'Malley, Administrator
  Attorney Registration and
  Disciplinary Commission

BY: _Thomas P. Sukowicz_
        Thomas P. Sukowicz

Thomas P. Sukowicz
Counsel for Administrator
203 North Wabash Avenue
Suite 1900
Chicago, Illinois 60601
Telephone: (312) 346-0690

FILED

OCT 17 1989

ATTY REG & DISC COMM
CHICAGO



STATE OF ILLINOIS
## SUPREME COURT CLERK
SUPREME COURT BUILDING
SPRINGFIELD 62706

JULEANN HORNYAK

CLERK OF THE COURT

(217) 782-2035

FIRST DISTRICT OFFICE
ROOM 30-129
RICHARD J. DALEY CENTER
CHICAGO 60602
(312) 793-1338

December 6, 1989

Mr. Thomas P. Sukowicz
Attorney Registration and
  Disciplinary Commission
203 North Wabash Ave., S#1900
Chicago, IL 60601

Mr. Clifford C. Johnson
Attorney at Law
6006 159th Street, #B
Oak Forest, IL. 60452-2904

THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:

M.R. 6142 - In re: Michael John Madden.  Disciplinary Commis-
            sion.

            The motion by Michael John Madden to strike his
            name from the roll of attorneys licensed to
            practice law in Illinois pursuant to Supreme Court
            Rule 762 is <u>allowed</u>.

            The mandate has issued forthwith.


JH/hc
cc:  Mr. Michael John Madden
     Mr. Kenneth Jablonski, Clerk
     Atty. Reg. & Disc. Comm.

FILED
DEC - 8 1989
ATTY REG & DISC COMM
CHICAGO

FORM NO. L

# State of Illinois
## Supreme Court

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the ___thirteenth___

day of ___November___, 19 89 .

Present: Thomas J. Moran, **Chief Justice**

**Justice** Daniel P. Ward     **Justice** Howard C. Ryan
**Justice** William G. Clark     **Justice** Ben Miller
**Justice** John J. Stamos     **Justice** Horace L. Calvo

On the ___6th___ day of ___December___, 19 89 , the Supreme Court entered the following judgment:

FILED

DEC - 8 1989

ATTY REG & DISC COMM
CHICAGO

In re:

M.R. 6142

Michael John Madden
421 Washington Street
Barrington, IL 60010

)
)
)
)
)
)
)

Atty. Reg. &
Disc. Comm.
89 CH 636

     IT IS ORDERED THAT the motion by Michael John Madden to strike his name from the roll of attorneys licensed to practice law in Illinois pursuant to Supreme Court Rule 762 is <u>allowed</u>.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court this ___6th___ day of ___December___, 19 89 .

*Juleann Hornyak*

Clerk.
Supreme Court of the State of Illinois

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. )<br>JOSEPH MAX, ) | | |
| ) | | |
| Petitioner, ) | | |
| ) | | |
| v. ) | | No. 08 C 0616 |
| ) | | |
| ) | | |
| KEVIN GILSON, Warden, ) | | The Honorable |
| ) | | Matthew F. Kennelly, |
| Respondent. ) | | Judge Presiding. |

## MOTION TO DISMISS

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent Kevin Gilson, Acting Warden of Illinois River Correctional Center, moves to dismiss the habeas petition because it is an unauthorized second or successive petition. Thus, this Court lacks jurisdiction. In support, respondent states as follows:

**Background**

1.     Petitioner, identified as prisoner number N21823, is incarcerated at the Western Illinois Correctional Center in Mt. Sterling, Illinois. (Doc. 1 at 28).

2.     In a 1982 jury trial, petitioner was convicted in Cook County Circuit Court of murder and sentenced to a 70-year term of imprisonment. (*Id.* at 1-2). Petitioner pursued a direct appeal, including petitioning the United States Supreme Court for a writ of certiorari, which was denied on June 8, 1987. (*Id.* at 2). Thus,

petitioner's conviction was final long before Congress enacted a one-year statute of limitations for federal habeas petitions. *See* 28 U.S.C. § 2244(d)(1).

3. In 1984, petitioner filed a previous federal habeas petition attacking the same criminal conviction at issue in the instant habeas petition. (Doc. 1 at 4). The district court denied the petition on November 6, 1984. (*Id.*; *see also* Resp. Ex. A). On November 30, 1984, the district court declined to issue a certificate of probable cause (CPC). (Resp. Ex. B at 5-6). The CPC denial demonstrates that the district court denied this habeas petition on the merits, with prejudice. (*See id.* at 3-5) (noting that habeas relief was denied because petitioner had failed to show a constitutional violation).

4. On January 4, 2008, petitioner placed the instant habeas petition in the institutional mail at Western Illinois Correctional Center. (Doc. 1 at 28).

**Legal Standard**

"Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). A successive petition containing a new claim is allowable only if the claim is based on: (1) newly discovered facts that challenge the accuracy of the guilty verdict; or (2) a new rule of constitutional law retroactively applicable to cases on collateral review. *Burton v. Stewart*, 127 S. Ct. 793, 796 (2007); 28 U.S.C. § 2244(b)(2)(A) & (B).

2

**Argument**

This Court lacks jurisdiction. In 1984, petitioner filed a previous federal habeas petition attacking the same criminal conviction that is the subject of this petition. (Doc. 1 at 4). The district court denied the petition on November 6, 1984, in a decision on the merits. (*Id.*; *see also* Resp. Exs. A & B).

A petitioner must obtain leave from the United States Court of Appeals to file a second or successive § 2254 petition. *Burton*, 127 S. Ct. at 796; *Stewart v. Martinez-Villareal*, 523 U.S. 637, 641 (1998); *O'Connor v. United States*, 133 F.3d 548, 550 (7th Cir. 1998). Respondent's search of the Seventh Circuit's electronic docketing system and the Attorney General's internal files reveals that petitioner has not done so.

A second habeas petition "may no more begin in the district court than a criminal prosecution may begin in the court of appeals." *Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996). No matter how compelling a petitioner's showing, only "the appropriate court of appeals" may authorize the commencement of a second or successive petition. § 2244(b)(3)(A); *Nunez*, 96 F.3d at 991. From the district court's point of view, prior approval is an allocation of subject matter jurisdiction to the court of appeals. *Lambert v. Davis*, 449 F.3d 774, 777 (7th Cir. 2006) (citing *Nunez*, 96 F.3d at 991). A district court "must dismiss a second or successive petition . . . unless the court of appeals has given approval for its filing." *Nunez*, 96 F.3d at 991; *see also In re Page,* 170 F.3d 659, 661 (7th Cir. 1999).

3

Because the district court denied the 1984 petition on the merits, the instant

petition is successive. *Wainwright v. Norris*, 121 F.3d 339, 340 (8th Cir. 1997); *In re*

*Wilson*, 142 F.3d 939, 940 (6th Cir. 1998); *In re Turner*, 101 F.3d 1323, 1323 (9th

Cir. 1996); *see also Pavlovsky v. VanNatta*, 431 F.3d 1063, 1065 (7th Cir. 2005).

Because petitioner has not shown that he obtained the requisite approval of

the Seventh Circuit before filing the instant habeas petition, this Court should

dismiss it for lack of jurisdiction.[1]

**Conclusion**

This Court should dismiss the instant habeas petition for lack of jurisdiction.

April 18, 2008                    Respectfully submitted,

                                  LISA MADIGAN
                                  Attorney General of Illinois

                        By:       /s/ Karl R. Triebel
                                  KARL R. TRIEBEL, Bar # 6285222
                                  Assistant Attorney General
                                  100 W. Randolph St., 12th Floor
                                  Chicago, Il. 60601-3218
                                  TELEPHONE: (312) 814-2391
                                  FAX: (312) 814-2253
                                  EMAIL: ktriebel@atg.state.il.us

---

[1] The instant petition is also untimely under 28 U.S.C. § 2244(d), but this Court may
not reach that issue due to lack of jurisdiction. Should petitioner refile after obtaining
permission from the Seventh Circuit, respondent preserves as an affirmative defense
the untimeliness of the petition under § 2244(d).

4

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

JUN 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA, ex rel,

    JOSEPH MAX,

        Petitioner           NO. 08 C 0616

    VS.

                        The Honorable
KEVIN GILSON, WARDEN,        Matthew F. Kennelly,
        Respondent.        Judge Presiding.

## PETITIONER'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS

    Joseph MAX, pro se petitioner in the above-entitled cause, comes before the Court in answer to Respondent's "Motion To Dismiss" his petition for writ of habeas corpus and, accordingly, does so by offering the following:

    <u>1.</u>) Petitioner is no longer incarcerated at the Western Illinois Correctional Center. His new residence is at the Illinois River Correctional Center in Canton, Illinois.

2.) True. Petitioner was convicted and sentenced in Cook County to a term of 70 years for the crime of murder. It is also true petitioner pursued a direct appeal and petitioned the United States Supreme Court for a writ of certiorari which was denied. Although petitioner's conviction was final before enactment of a one-year statute of limitations for federal habeas relief, there are exceptions to the procedural restriction and petitioner believes, and hopes to demonstrate to this Court, his case meets the requirements of one or more of those exceptions.

3.) True. Petitioner, through counsel, has filed a previous federal habeas petition, which was denied, as was a certificate of probable cause. However, said petition did not raise or brief the issues presented in this, petitioner's second petition for writ of habeas corpus.

4.) True.

LEGAL STANDARD(?)

Petitioner Max was not aware, although argument may be made that he should have been, aware of the legal requirements for a Certificate of Appealibility before the filing of his petition and does not, at this

time", Argue with the legal standards for doing so.

## ARGUMENT

Whether or not this Court lacks jurisdiction is a matter for the Court to decide. However, as previously stated, this petition does not address the same issues as those presented in his previous habeas petition.

This is petitioner's "second" petition, the merits of which are based on newly discovered facts that challenge the accuracy of the guilty verdict, viz: Evidence of prosecutorial misconduct, perjury, subornation of perjury and a biased trial judge.

Through evidence, petitioner ~~petitioner~~ intends to establish these improper and illegal acts he now complains of and, if allowed, to develope the record futher, will prove that his due process rights to a fair trial were violated.

In conjunction with this Response, petitioner has included herewith his "MOTION IN ABEYANCE" requesting the Court to hold his case in pendenti until such time as the federal Court of Appeals, Seven Circuit, has ruled on his application for

Certificate of Appelability or, in the Alternative, to Allow petitioner to withdraw his habeas petition without prejudice until his Application is ruled upon by the Seventh Circuit Court of Appeals.

WHEREFORE, Joseph Max, pro se petitioner herein, Respectfully requests this Honorable Court Allow his case to move forward on the jurisdictional path towards Adjudication of his claims of constitutional violations.

Respectfully Submitted,

Mr. Joseph Max

Joseph Max
Reg. No. N 21823
P.O. Box 1900
Canton, Illinois  61520

Subscribed And Sworn to before me this 28th day of May                , 2008

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Don A. Burkhart
Notary Public State of Illinois
My Commission Exp. 08/22/2008

STATE OF ILLINOIS

COUNTY OF FULTON

SS

# AFFIDAVIT

I, Joseph MAX, being first duly sworn upon oath deposes and states that the following affidavit is true and correct to the best of my knowledge and beliefs for all just and meritorious purposes. In support thereof I state as follows:

1.) That I am the petitioner in the cause of U.S. ex rel MAX v. Gilson, NO. 08 C 0616 and the affiant herein;

2.) That I am the author of the "Motion for Abeyance" and the "Response to Respondents Motion To Dismiss" both filed with this Court on or before the 30th day of MAY, 2008, the contents of which I believe to be true in substance and in fact;

3.) That I shall file, on or before, the 30th day of JUNE, 2008, a "Certificate of

Appealability before the Seventh Circuit Court of

Appeals, requesting permission to file my habeas petition before this Honorable Court;

4.) That I have discovered new evidence of prosecutorial misconduct and prejudice of a biased trial judge which has denied affiant his constitutional right to a fair trial;

5.) That such new evidence will be supported by affidavit of the people who have provided this newly discoved evidence and shall, if allowed or subpoenaed, testify before this Court in relationship thereto.

6.) That these Affidavits are supportive of Affiant's claim of constitutional violations, and Affiant's claims of such violations are supported by legal authority;

7.) That Affiant shall present this newly discoved evidence, and support thereof, to the Seventh Circuit Court of Appeals with his Application for Certificate of Appealability;

Further Affiant sayeth naught.

Subscribed and Sworn to before
me this 28th day of May , 2008.

~~Don A. Bu~~

"OFFICIAL SEAL"
Don A. Burkhart
Notary Public, State of Illinois
My Commission Exp. 08/22/2008

NOTARY PUBLIC


MR. Joseph Max
Joseph MAX , Affiant
Reg. No. N-21823
P.O. BOX 1900
CANTON , IL. 61520

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION          RECEIVED

JUN  2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA, ex rel,

    JOSEPH MAX,

          Petitioner          No. 08 C 0616

vs.

                         The Honorable

KEVIN GILSON, WARDEN,          Matthew F. Kennelly,

          Respondent.          Judge Presiding

MOTION FOR ABEYANCE OF HABEAS PETITION
AND/OR
MOTION TO WITHDRAW WITHOUT PREJUDICE

    Joseph MAX, petitioner in the above-entitled cause comes before this Honorable Court requesting his petition for writ of Habeas Corpus be held in pendenti until the federal Court of Appeals for the Seventh Circuit, Rules on his application for a "certificate of Appealability", or in the alternative, that this Honorable Court allow him to withdraw his habeas petition without prejudice until the Seventh Circuit issues a Ruling on said Application. As Reason/s therefore, petitioner, Joseph MAX, states the following:

1.) That petitioner is a prose litigant sentenced by the Circuit Court of Cook County to be confined by the ILLINOIS Department of Corrections;

2.) That being so confined there could be a great deal of time, expense, and delay in the re-filing of his petition if the Seventh Circuit Court of Appeals grants his application for a certificate of Appealability;

3.) Petitioner has a meritorious cause of action and evidence sufficient to establish the facts surrounding his claims of constitutional violations and if such facts as alleged, viz: prosecutorial misconduct concerning the introduction of perjured testimony, are proven, reversal is "virtually automatic" UNITED STATES v. WALLACH, 935 F.2d 445; UNITED STATES v Stofsky, 527 F.2d. 237.

If, as petitioner intends, he proves a "structural" constitutional violation concerning his claim of a biased judge, such an act can not be considered harmless and warrants the grant of habeas relief. ARIZONA v. Fulminate, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

(2)

4.) Petitioner intends to prove ineffective Assistance of trial, Appellate and hired counsel, in that each were knowledgable of the facts raised in issue herein yet failed to take any action to Apprise the Courts of these constitutional violations.

Petitioner's trial counsel was ineffective and also up against a stacked deck — A prosecution whose over-zealous Actions to obtain a conviction went far beyond his search for the truth, and A trial judge who was hardly impartial and was, in fact, biased against the petitioner in his private comments, rulings from the bench and the free reign he gave the prosecution for the introduction of improper, prejudicial and inflammatory evidence.

Appellate counsel filed his brief, on petitioner's behalf, raising the issues "he" felt meritorious.

Attorney Sam Adams, who was hired by petitioner to represent him, post-conviction, filed an _Apprendi_ issue; an issue which petitioner has since discovered carried little merit in that _Apprendi_ did not provide for retro-active application. _Apprendi v. New Jersey, 530 US 466 (2000)._


5.) Through Affidavit and other convincing evidence, petitioner intends to prove the use of perjured testimony by more than one prosecution witness. Testimony prosecutor Michael Madden knew or should have known was perjured. Prosecutor Madden's

(3)

ACTIONS VIOLATED petitioner's Constitutional rights under Napue, by presenting false evidence to the jury and under Alcorta and Pyle, by failing to correct the record following the presentation of the false testimony. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217 (1959); Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed. 2d (1957); Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), and his conduct was egregious, destroying the integrity of the trial. He deliberately deceived the jury, shifted the burden of proof to petitioner and diminished the presumption of innocence through the introduction, my mock trial), of other crimes evidence which the petitioner was neither charged, tried for or convicted of; evidence which was neither material to the issue of guilt or innocence concerning the crime petitioner was on trial for, or admissible under the Rules of Evidence.

6.) Petitioner intends to prove the trial judge, who had complete authority over the conduct of the trial, had formed a presumptuously biased opinion of petitioner's guilt affecting the basic elements of his trial. A fact which will shed new light on the entire Record concerning the errors complained of herein and those previously raised in petitioner's direct appeal and his previous post conviction petition. Such bias, once shown to be true, should not be viewed alone but

(4)

in conjection with other errors.

WHEREFORE, petitioner, Joseph MAX, contends that allowing the dismissal of his habeas petition, claiming constitutional violation, without review, opportunity to develope the record or evidentiary hearing concerning the merits of those claims, by rasing a procedural bar to doing so, would constitute a miscarriage of justice.

ON OR about the 30th day of June, 2008, petitioner will file with the Seventh Circuit Court of Appeals, his application for Certificate of Appealability and will include evidence supporting his claims. Petitioner is therefore requesting this Honorable Court hold his petition for writ of habeas corpus in pendenti until the federal court of Appeals rules on his application, or, in the Alternative, allow him to withdraw his habeas petition without prejudice until said ruling has been made.

Respectfully submitted,

Mr. Joseph Max

Joseph MAX
Reg. No. N-21823
P.O. Box 1900
Canton, IL. 61520

( 5 )